# U.S. DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

|  |  |
|---|---|
| MATTHEW LANE HASSELL. et al,<br>    Plaintiff, | ) <br> ) CASE NUMBER: <br> ) |
| vs. | ) <br> ) |
| Department of Health and Human Services –<br>Bureau of Child Support Services et al,<br>Betty Raymond et al,<br>Lori A. Weaver et al,<br>Susan N. Brisson et al,<br>    Defendant, | ) <br> ) Trial By Jury Demanded <br> ) Yes <br> ) <br> ) <br> ) |

## CIVIL ACTION CLAIM FOR DAMAGES

### I. INTRODUCTION

Comes now, Matthew-Lane: Hassell (hereinafter, "Mr. Hassell" and/or "Plaintiff"), with clean hands, in good faith, using fair business practices and full disclosure. Appearing *Propria Persona Sui Juris*, as the clearly established and specifically designated beneficiary to the Original Jurisdiction, appearing by *special appearance* as opposed to general appearance, being of majority age, competent to testify, I affirm and attest under penalty of perjury, that the truths and facts herein are of firsthand personal knowledge and are true, correct, complete, and not misleading to the best of my abilities and integrity. I hereby invoke and ordain and establish the common law.

This action challenges systemic violations of constitutional and statutory rights arising from foundational defects in jurisdiction and due process. The underlying state domestic-relations proceeding has been stayed since around November 2023 and remains stayed pending resolution of a fully briefed and submitted federal appeal before the United States Court of Appeals for the First Circuit. Defendants seized Plaintiff's property through executive action after judicial authority had been suspended, rendering the seizure warrantless and unreasonable under the Fourth Amendment.

Notwithstanding the stay and the pendency of exclusive federal appellate jurisdiction, Defendants have continued to

impose and escalate enforcement measures against Plaintiff.
Plaintiff does not seek review, reversal, or modification of any
state-court judgment. Rather, Plaintiff challenges Defendants'
independent executive enforcement actions, taken without
operative judicial authority, in defiance of a stayed
proceeding, and in violation of federal constitutional
constraints, including the Supremacy Clause, the Due Process
Clause, and the First Amendment right to petition for redress of
grievances.

    This action further arises under and invokes the
protections of the First Amendment to the United States
Constitution, including the Petition Clause, which guarantees
the right to petition the government for redress of grievances
without retaliation. The enforcement actions challenged
herein—including wage garnishment, license-related sanctions,
and threatened credit reporting—were imposed and in response to
Plaintiff's protected petitioning activity, thereby chilling and
punishing the exercise of fundamental constitutional rights.

    Plaintiff also invokes the Seventh Amendment to the United
States Constitution and expressly preserves the right to trial
by jury on all claims so triable, including claims seeking legal
relief and damages for constitutional violations. This action is
not equitable-only in nature, and Plaintiff demands that all
disputed issues of material fact be tried to a jury of his
peers.

    Plaintiff seeks declaratory, injunctive, compensatory,
treble, and punitive damages for willful, knowing, reckless, and
callous disregard of Plaintiff's federal and State
constitutionally secured rights.

    Defendants' actions were not isolated or inadvertent, but
were undertaken pursuant to standardized policies, practices,
agreements, and enforcement mechanisms applied broadly to
similarly situated individuals subject to DHHS-BCSS enforcement.
The denial of disclosure, refusal to provide jurisdictional facts
and meaningful review, reliance on undisclosed agreement(s) and/
or contract(s), and escalation of coercive enforcement measures
reflect systemic conduct, not a case-specific anomaly.

These policies and practices include, but are not limited
to:
  (a) withholding record(s), evidence, and contract(s) and
agreement(s) while continuing enforcement;
  (b) abdicating meaningful administrative and supervisory

and judicial review, or issuing non-responses in lieu of
determinations;

(c) escalating coercive measures—including wage seizure,
license sanctions, and threatened or actual adverse credit
reporting—without individualized findings of fact and law;

(d) reliance on undisclosed "contracts or agreements with
another entity" to justify secrecy and enforcement; and

(e) non-individualized, boilerplate decision-making
reflecting rubber-stamp enforcement rather than
case-specific adjudication.

These acts are not isolated, inadvertent, or
case-specific, but constitute systemic conduct undertaken
pursuant to policy or custom. Defendants' uniform use of the
foregoing practices demonstrates deliberate indifference to
constitutional requirements and establishes that the
violations alleged herein are foreseeable, repeated, and
ongoing.

Plaintiff brings this action solely on his own behalf
for injuries personally suffered. Allegations of systemic
conduct are pleaded to establish the nature, scope, and
reprehensibility of Defendants' practices, to support
injunctive and declaratory relief, and to demonstrate
antitrust injury and punitive-damages factors. The foregoing
Policy, Practice, and Custom allegations are incorporated by
reference into each Count below.

## II. JURISDICTION AND VENUE

This Court has subject-matter jurisdiction over this action
pursuant to Article III of the United States Constitution and 28
U.S.C. § 1331, because this action arises under the Constitution
and laws of the United States, including claims brought under 42
U.S.C. § 1983 for violations of the First, Fourth, Fifth,
Seventh, and Fourteenth Amendments.

This Court further has jurisdiction pursuant to 28 U.S.C. §
1343(a)(3) and (4), as this action seeks to redress the
deprivation, under color of state law, of rights, privileges,

and immunities secured by the Constitutions of the United States and of the several states (specifically New Hampshire), and seeks declaratory, injunctive, and legal relief for those deprivations.

This Court has supplemental jurisdiction over related state-law claims pursuant to 28 U.S.C. § 1367(a), including but not limited to claims for enforcement of official bonds and blanket undertakings and statutory accountability under Part 1 Article 8 N.H. Constitution and NH RSA 93-B:1-a through RSA 93-B:5, because those claims form part of the same case or controversy as the federal constitutional claims, arise from a common nucleus of operative fact, and involve the same parties and conduct.

Plaintiff further alleges that compliance with the bonding requirements imposed by NH RSA 93-B:1-a through 93-B:5 and 45 C.F.R. § 302.19 constitutes a prerequisite to lawful office, authority, and enforcement power. To the extent any Defendant or BCSS employee or Employees of a court or law enforcement or official performing under a cooperative agreement with the IV-D agency or Employees of any private or governmental entity from which the IV-D agency purchases services acted without having satisfied those bonding requirements, such individual failed to meet the statutory prerequisites to office and authority, and any purported actions taken by that individual were ultra vires, unauthorized, and void.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this District, and because the Defendants reside in, are employed in, or conduct official business within this District.

This action seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive and legal relief pursuant to the Court's equitable powers and applicable federal law.

"This is not a routine civil motion but a matter of constitutional magnitude."

## III. FACTUAL ALLEGATIONS

1. Plaintiff Matthew-Lane: Hassell ("Plaintiff") is the subject of ongoing enforcement actions carried out by the New Hampshire Department of Health and Human Services, Bureau of Child Support Services ("DHHS-BCSS" or "BCSS"),

including wage seizure/garnishment and license-related threats and enforcement, beginning in or about 2023 and continuing through at least 2025, as further described herein.

2. Plaintiff has repeatedly sought disclosure of the factual basis, full accounting, authority, and documentation BCSS relies upon to justify ongoing enforcement against him (see Exhibit A). Plaintiff has demanded administrative/supervisory review and lawful disclosure before continued coercive action. See Exhibit A.

3. On or about August 24, 2024, Plaintiff submitted the State of New Hampshire DHHS "Request for Case Information" (Form 637A), expressly requesting information in his case be provided, and invoking statutory authority including RSA 161-B:7, III. See Exhibit A.

4. The Form 637A contains an acknowledgment clause stating, in substance, that Plaintiff "understand[s] that information in [his] case record which is prohibited from release by federal law, state statute, state case law, or by contract or agreement with another entity, shall not be released."

5. Plaintiff did not knowingly and voluntarily consent to any "contract or agreement" secrecy regime being used as a shield to withhold evidence from him while simultaneously imposing coercive enforcement measures. On the Form 637A itself, Plaintiff wrote language reflecting that the request was made under coercion/duress and with rights reserved, including "Under Duress and Coercion," "All Rights Reserved Without Prejudice," and "VOID WHERE PROHIBITED BY LAW."

6. Plaintiff has issued a formal written dispute and rejection of any attempt by BCSS to treat that acknowledgment clause as a waiver, consent, jurisdictional admission, limitation of rights, or blanket authorization to withhold records based on undisclosed "contracts or agreements with another entity." Plaintiff demanded identification and production of the agreements and the specific legal authority that BCSS claims permits withholding based on such agreements. See Exhibit A.

7. In that dispute/demand, Plaintiff demanded production of "All agreement(s) and contract(s) BCSS relies upon," demanded "All statutory and regulatory authority BCSS claims permits withholding based on such agreement(s)," and demanded written confirmation that the "BCSS acknowledgment clause is not being used as a waiver, consent, jurisdictional admission, or limitation on rights."

8. Plaintiff further demanded written assurance that enforcement would be held in abeyance pending the outcome

of the First Circuit matter identified in his written
demand (Case No. 24-1442) and compliance with due process
and disclosure obligations. See Exhibit A, inclusive.

9. Plaintiff's written dispute/demand invoked and relied upon
   federal and state disclosure regimes including 5 U.S.C. §
   552 (FOIA), NH RSA 91-A, and NH RSA 161-B:7, III, and
   demanded interagency correspondence and internal
   communications, including notes and database entries.

10.  Plaintiff's written dispute/demand further demanded proof
   of bonding and lawful prerequisites of authority for
   officials and employees connected to the enforcement
   actions, including demands tied to 45 C.F.R. § 302.19
   (Bonding of employees) and NH RSA 93-B:1-a through 93-B:5,
   including identification of custodians and sureties
   responsible for maintaining such instruments.

11.  Plaintiff explicitly notified BCSS that failure to comply
   constituted, among other things, "obstruction of due
   process," "denial of access to evidence," and "unlawful
   withholding" under the cited disclosure statutes, and
   further constituted ultra vires agency conduct and
   actionable violations under 42 U.S.C. § 1983.

12.  Separately, in Plaintiff's FOIA/records demand materials,
   Plaintiff referenced a New Hampshire "Interagency
   Memorandum of Understanding," and quoted language from that
   MOU stating: "The Parties agree that the obligations,
   agreements and promises made under this Memorandum of
   Understanding are not intended to be legally binding on the
   Parties and are not legally enforceable." Plaintiff
   provided written notice that enforcement imposed against a
   nonconsenting party under such an arrangement is fraudulent
   and not enforceable against him.

13.  Plaintiff's written FOIA/records demand further asserted
   that agency interpretations and secrecy are insufficient,
   demanded full disclosure, and challenged the legitimacy of
   enforcement absent lawful authority, consent, jurisdiction
   and due process, while expressly reserving rights and
   objecting to coercive "form" compulsion and non-disclosure.

14.  On or about November 25, 2025, Plaintiff served a
   "SUPERVISORY REVIEW DEMAND & NOTICE OF CONSTITUTIONAL,
   JURISDICTIONAL, AND PROCEDURAL DEFECTS" with attachments,
   demanding supervisory review and documenting due process
   and jurisdictional defects in the enforcement process. See
   Exhibit A.

15.  Plaintiff's supervisory review demand materials include,
   as an attachment reference, a "DHHS-BCSS NOTICE OF …
   LICENSE REVOCATION—DATED NOVEMBER 13, 2025," evidencing
   BCSS's use of license-related sanctions/pressure as part of

its enforcement program.
16.   Plaintiff alleges that BCSS has failed to provide
meaningful supervisory review, failed to produce the
demanded agreements/contracts, failed to identify the
statutory and regulatory authority permitting withholding
under "contract or agreement with another entity," and
failed to provide the demanded bond/authority proof and
custodial/surety identification, while continuing coercive
enforcement measures.
17.   Plaintiff alleges and gives notice that BCSS's refusal to
disclose records and evidence while simultaneously pursuing
wage seizure and license sanctions deprives Plaintiff of
notice and a meaningful opportunity to be heard, and
constitutes a continuing denial of procedural due process
under the Fourteenth Amendment and 42 U.S.C. §
666(a)(8)(B)(iv) and 42 U.S.C. § 666(a)(7)(B) actionable
under 42 U.S.C. § 1983.
18.   Plaintiff alleges and gives notice that BCSS's use of
coercive enforcement mechanisms while withholding records
based on undisclosed "contracts or agreements with another
entity" constitutes a structural and intentional
obstruction of Plaintiff's access to evidence,
administrative redress, and meaningful review, and is
designed to force compliance by economic pressure rather
than lawful adjudication.
19.   Plaintiff alleges and gives notice that he has engaged in
protected petitioning activity, including records demands,
supervisory review demands, and jurisdictional/procedural
objections, and that BCSS's continuation and escalation of
enforcement in response constitutes unconstitutional
retaliation for petitioning the government for redress of
grievances, in violation of the First Amendment, unlawful
seizure of property pursuant to the Fourth Amendment and
Part 1 Articles 2-b and 15, actionable under 42 U.S.C. §
1983.
20.   Plaintiff alleges and gives notice that BCSS's invocation
of withholding based on "contract or agreement with another
entity," coupled with interagency enforcement arrangements
(including the MOU language quoted by Plaintiff),
constitutes concerted action and agreement-based conduct
rather than purely unilateral conduct, and that such
agreement-based secrecy is being used as an instrumentality
of enforcement against Plaintiff.
21.   Plaintiff alleges and gives notice that BCSS's conduct
constitutes a "combination" or "conspiracy" in restraint of
trade and commerce affecting interstate commerce, including
through agreement-based data control and coercive

collection mechanisms, and therefore implicates 15 U.S.C. §
1 (Sherman Act) and civil remedies under 15 U.S.C. § 15
(Clayton Act), to the extent discovery confirms agreements
with non-state entities used to impose market consequences
and suppress contestation.

22.  Plaintiff further alleges on information and belief that
BCSS's "contract or agreement with another entity" language
includes agreements with third parties involved in
enforcement, collection, reporting, and/or data-sharing
functions, and that BCSS's refusal to identify those
entities and agreements is deliberate and intended to
prevent scrutiny and legal challenge.

23.  Plaintiff alleges and gives notice that Defendants have
acted "under color of law" and in concert to deprive
Plaintiff of rights secured by the State and Federal
Constitutions, including rights to due process and to
petition, and that such conduct constitutes conspiracy to
injure, oppress, threaten, and intimidate in the free
exercise and enjoyment of constitutionally secure rights,
and deprivation of rights under color of law, within the
meaning of 18 U.S.C. §§ 241 and 242, respectively.
Plaintiff pleads these criminal statutes to characterize
the gravity and unlawfulness of the conduct and to preserve
a demand for referral to appropriate prosecutorial
authorities, while seeking civil remedies under 42 U.S.C. §
1983 and related civil causes.

24.  Plaintiff alleges and gives notice that if BCSS employees
and associated enforcement actors have not satisfied
bonding prerequisites required by 45 C.F.R. § 302.19 and NH
RSA 93-B:1-a through 93-B:5 (as demanded in Plaintiff's
dispute materials), such individuals have not fulfilled
prerequisites to lawful office and authority, and any
enforcement actions taken by them are ultra vires and void.

25.  Plaintiff alleges and gives notice that BCSS's continued
enforcement while denying access to the very jurisdictional
facts and record(s) and agreement(s) that allegedly
authorize withholding is willful, knowing, and reckless,
and supports punitive damages and equitable relief,
including orders compelling disclosure, and enjoining
further enforcement pending full lawful Article III
constitutional judicial process.

26.  Plaintiff further alleges that BCSS has threatened or
initiated consumer credit bureau reporting of alleged
arrearages, and that Plaintiff timely invoked supervisory
review/dispute procedures; Plaintiff alleges BCSS has
failed to respond to that supervisory review demand.
Plaintiff includes this allegation to preserve imminent

harm.

## IV. COUNTS FOR RELIEF

### COUNT I

### 42 U.S.C. § 1983 — Procedural Due Process - (Fourteenth Amendment)

**Against DHHS; BCSS; [Lori A. Weaver, Susan N. Brisson and Betty Raymond], in individual and official capacities (collectively, "Defendants")**

### A. Parties and Color of Law

1. This Count is brought against the New Hampshire Department of Health and Human Services ("DHHS"); the Bureau of Child Support Services ("BCSS"); the BCSS Director/Administrator; and Employee officials (collectively, "Defendants").

2. At all relevant times, each Defendant acted under color of law within the meaning of 42 U.S.C. § 1983.

### B. Governing Law

1. Due process requires disclosure of material evidence and a meaningful opportunity to be heard before the State deprives a person of property or liberty. Withholding material evidence violates due process. *Brady v. Maryland*, 373 U.S. 83 (1963). 42 U.S.C. § 666(a)(8)(B)(iv) — income withholding must comply with all procedural due-process requirements of the State. State due-process must comply with State and Federal constitutionally secured rights.

2. Silence where there is a duty to speak constitutes fraud. Where a governmental actor has a duty to disclose material facts, nondisclosure and silence are actionable. *United States v. Tweel*, 550 F.2d 297, 299–300 (5th Cir. 1977).

3. Jurisdiction is never presumed; once challenged, it must be decided. Actions taken without jurisdiction are void, and a tribunal lacking jurisdiction has no authority to reach the merits. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910; *Melo v. United States*, 505 F.2d 1026; *United States v. Rogers*, 23 F. 658.

9

4. Statements of counsel or agency assertions are not evidence. Courts and agencies may not decide facts without affidavits or admissible proof. *Trinsey v. Pagliaro*, 229 F. Supp. 647 (1964).

5. Rubber-stamp or non-individualized review renders orders void. Process that lacks individualized consideration violates fundamental requirements. *State v. Paulick*, 277 Minn. 140, 151 N.W.2d 596 (1967).

6. Due process is mandatory before imposing sanctions or penalties. Fines, sanctions, or other coercive measures require prior due process. *Ryan v. Commission on Judicial Performance*, 45 Cal. 3d 518, 533 (1988).

7. NH RSA 458-A:8(I) explicitly states that participation in proceedings does not create personal jurisdiction. Judgments entered without personal jurisdiction are void. *Sramek v. Sramek*, 17 Kan. App. 2d 573, 576-77, 840 P.2d 553 (1992).

8. Official immunity is not absolute. Acts taken outside lawful authority are not protected. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

9. Courts must exercise independent judgment; agencies may not define the law. Chevron deference is overruled; statutory interpretation is judicial. *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024); *Marbury v. Madison*, 1 Cranch 137, 177; *United States v. American Trucking Ass'ns*, 310 U.S. 534, 544; *Decatur v. Paulding*, 14 Pet. 497, 515.

10. Pro se filings are liberally construed. *Haines v. Kerner*, 404 U.S. 519 (1972); *Woods v. Carey*, 525 F.3d 886, 889-90 (9th Cir. 2008).

11. Issues not supported by evidence are deemed waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

## B-1. Constitutional Provisions Violated

## United States Constitution

### U.S. CONST. amend. V (Due Process Clause)

1. The Fifth Amendment guarantees that no person shall be deprived of life, liberty, or property without due process of

law. Through the Fourteenth Amendment, this protection applies fully to the States and their agencies.

**U.S. CONST. amend. XIV, § 1 (Due Process & Equal Protection)**

1. The Fourteenth Amendment prohibits any State from depriving any person of life, liberty, or property without due process of law, and guarantees equal protection of the laws.

2. Defendants' enforcement actions—undertaken while withholding evidence, silence instead of review, and relying on undisclosed agreements—constitute deprivations of property and liberty interests without hearing, disclosure, or lawful judicial adjudication, in violation of the Fourteenth Amendment.

**U.S. CONST. amend. I (Petition Clause)**

1. The First Amendment guarantees the right of the people to petition the government for redress of grievances. Plaintiff exercised this right by submitting record(s) requests, jurisdictional objections, FOIA demands, and supervisory review demands.

2. Defendants' continuation and escalation of enforcement in response to Plaintiff's petitioning activity violates the First Amendment and independently aggravates the due-process violations pleaded herein.

**U.S. CONST. amend. VII (Right to Jury Trial)**

1. The Seventh Amendment preserves the right to trial by jury in suits at common law where the value in controversy exceeds twenty dollars.

2. To the extent Defendants impose civil penalties, coercive sanctions, or monetary deprivations without judicial adjudication, Defendants have infringed Plaintiff's Seventh Amendment right to have disputed facts determined by a jury.

**U.S. CONST. art. I, § 1 (Non-Delegation / Separation of Powers)**

1. All legislative powers are vested in Congress. Administrative agencies may not define, expand, or invent legal authority through internal agreements, MOUs, or interpretations.

2. Defendants' reliance on undisclosed agreements and agency interpretations to justify enforcement violates separation-of-powers principles enforced by the judiciary, as recognized in *Marbury* and *Loper Bright* supra.

## New Hampshire Constitution

### N.H. CONST. pt. I, art. 1
1.All men are born equally free and independent; Therefore, all government of right originates from the people, is founded in consent, and instituted for the general good. Plaintiff has not consented to governmental enforcement through DHHS-BCSS.

### N.H. CONST. pt. I, art. 2
1. All men have certain natural, essential, and inherent rights among which are, the enjoying and defending life and liberty; acquiring, possessing, and protecting, property; and, in a word, of seeking and obtaining happiness. Equality of rights under the law shall not be denied or abridged by this state on account of race, creed, color, sex or national origin. Plaintiff asserts BCSS and its agents has denied or abridged and retaliated against his natural, essential, and inherent rights to enjoying and defending life and liberty; acquiring, possessing, and protecting, property; and, in a word, of seeking and obtaining happiness on the creed of their absence of jurisdiction and authority.

### N.H. CONST. pt. I, art. 2-b
1. Plaintiff's right to live free from governmental intrusion into private and personal information is natural, essential, and inherent; nevertheless, BCSS and its agents, acting under color of law created and/ or maintained records and accounts in Plaintiff's name and used those records to impose penalties, constituting an unreasonable and unconstitutional intrusion into Plaintiff's private and financial information.

### N.H. CONST. pt. I, art. 3
1. **[Society, its Organization and Purposes.]**

When men enter into a state of society, they surrender up some of their natural rights to that society, in order to ensure the protection of others; and, without such an equivalent, the surrender is void.

By structuring Title IV-D participation so that one parent's unilateral application or cooperation sets in motion statutorily prescribed, federally incentivized administrative enforcement against the other, DHHS-BCSS converts a purportedly voluntary framework into coercive state action, depriving the obligor of liberty and property—including income, tax refunds, licenses, credit standing, and reputation—through mandatory withholding, interception, and reporting mechanisms imposed without consent, individualized adjudication, or reciprocal

benefit. Because the obligor receives no corresponding protection, benefit, or meaningful choice in exchange for compelled submission to BCSS record-creation, data control, and enforcement authority, no constitutional equivalent exists, and any asserted surrender of rights is void under Part I, Article 3, rendering the resulting actions of the State and its agents ultra vires, constitutionally invalid, and void both facially and as applied.

This conclusion is compelled by the nature of constitutional rights themselves. The United States Supreme Court has explained that constitutional rights function as self-executing prohibitions on governmental action, and that a constitutional violation accrues at the moment the government undertakes the unconstitutional act. *See Christopher L. Wilson v. Hawaii*, No. 23-7517 (Dec. 9, 2024) (Statement of Thomas, J.) (explaining that rejection of state procedural barriers follows from the self-executing nature of constitutional rights), citing *City of Boerne v. Flores*, 521 U.S. 507, 524 (1997), and *Knick v. Township of Scott*, 588 U.S. 180, 194 (2019). Accordingly, the constitutional injury here arose when BCSS initiated record-based enforcement without a valid surrender of rights, not when Plaintiff later objected or sought review, and no subsequent administrative process can retroactively supply the missing constitutional equivalent.

By coercively creating, maintaining, and/ or weaponizing personal and financial records without consent, jurisdiction, or reciprocal constitutional equivalent, DHHS-BCSS effected a void surrender of rights prohibited by Part I, Article 3, while simultaneously intruding into protected private and personal information in violation of Part I, Article 2-b; when Plaintiff objected, contested jurisdiction, and petitioned for redress, the agency escalated enforcement rather than curing the defect, transforming administrative authority into retaliation, and thereby converting any claimed regulatory action into a compounded structural violation—void ab initio, ultra vires, and independently actionable—because the Constitution forbids the State from exacting surrender without equivalent, invading privacy without authority, or punishment for invoking the Constitution itself.

**N.H. CONST. pt. I, art. 14 (Due Process – Notice and Hearing)**
 1. Every subject of this State is entitled to a certain remedy, by having recourse to the laws, for all injuries he may receive in his person, property, or character; to obtain right and justice freely, without being obliged to purchase it; completely, and without any denial; promptly, and without delay;

conformably to the laws.

Defendants' refusal to disclose record(s), provide detailed review, or issue findings constitutes a denial of Article 14 rights.

**N.H. CONST. pt. I, art. 15 (Due Process / Law of the Land)**
 1. ...shall be held to answer for any crime, or offense, until the same is fully and plainly, substantially and formally, described to him; or be compelled to accuse or furnish evidence against himself. Every subject shall have a right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and to be fully heard in his defense, by himself, and counsel. No subject shall be arrested, imprisoned, despoiled, or deprived of his property, immunities, or privileges, put out of the protection of the law, exiled or deprived of his life, liberty, or estate, but by the judgment of his peers, or the law of the land;...

This requires lawful jurisdiction, notice of the nature and cause of the proceeding, the opportunity to confront adverse evidence and witnesses, and a meaningful opportunity to be heard before an impartial decisionmaker. These guarantees are coextensive with, and reinforced by, the Fifth and Fourteenth Amendments to the United States Constitution, which prohibit deprivation of life, liberty, or property without due process of law and forbid compelled self-incrimination through coerced participation in administrative schemes.

The United States Constitution is the supreme Law of the Land, *see* U.S. CONST. art. VI, cl. 2, and binds all state judges, officers, and agencies notwithstanding contrary state practice or administrative convenience. Accordingly, "law of the land" does not mean administrative fiat, undisclosed inter-agency agreements, or automated enforcement triggered by unilateral third-party action; it requires lawful authority, personal and subject-matter jurisdiction, adequate notice, evidentiary process, and adjudication by a neutral tribunal. Where, as here, DHHS-BCSS initiates and escalates record-based enforcement actions that deprive Plaintiff of income, property, licenses, credit standing, and legal protections without jurisdiction, individualized adjudication, or voluntary consent, BCSS acts outside the law of the land, in violation of Part I, Article 15, the Fifth Amendment, and the Fourteenth Amendment.

When such deprivations are imposed through coercive administrative mechanisms that compel compliance, silence objection, or penalize the act of contesting jurisdiction or

petitioning for redress, they further constitute retaliatory
enforcement and compound the underlying due-process violation.
Because due-process protections are self-executing limits on
governmental power, no post-hoc administrative review can cure
enforcement actions that were constitutionally defective at
their inception, and all such actions are void ab initio, ultra
vires, and unenforceable.

**N.H. CONST. pt. I, art. 20 (Jury Trial)**
 1. In all controversies concerning property of $1500.00 or
more, the parties have a right to trial by jury.

> Where DHHS-BCSS effects administrative seizure of wages,
> interception of funds, and imposition of coercive
> monetary penalties, it adjudicates liability and imposes
> punishment without judicial process and without
> affording the right to a jury, in direct violation of
> Part I, Article 20. A State agency may not convert what
> is constitutionally a judicial controversy over property
> into an executive or administrative enforcement scheme
> insulated from jury determination.

> This conclusion is compelled by the United States
> Supreme Court's decision in SEC v. Jarkesy, 603 U.S. ___
> (2024), which held that when the government seeks civil
> penalties that are punitive or deterrent in nature, the
> Seventh Amendment entitles the defendant to a jury
> trial, and that the "public rights" doctrine does not
> permit the government to evade Article III courts and
> juries merely by assigning enforcement to an
> administrative forum.

> Here, BCSS enforcement mechanisms—automatic withholding,
> interception, reporting, and penalty escalation—operate
> as punitive, coercive monetary sanctions imposed by
> executive action. Such enforcement mirrors the very
> constitutional defect condemned in *Jarkesy*. Accordingly,
> Defendants' conduct violates Part I, Article 20 of the
> New Hampshire Constitution and the Seventh Amendment,
> and further violates the Fifth and Fourteenth
> Amendments, which forbid deprivation of property without
> due process of law.

> When these deprivations are imposed without lawful
> surrender under Part I, Article 3, without "law of the
> land" adjudication under Part I, Article 15, through
> coercive record-based enforcement intruding on protected
> privacy under Part I, Article 2-b, and are escalated in

response to Plaintiff's objections and petitions for redress, they constitute a compounded structural constitutional violation. Such violations are void ab initio, ultra vires, and independently actionable under 42 U.S.C. § 1983, with supplemental jurisdiction over the parallel state constitutional claims.

## C. Deprivations Without Due Process

1. Plaintiff incorporates Section III.

2. Defendants deprived Plaintiff of protected property and liberty interests—including wages—while failing to prove jurisdiction and withholding the evidence, records, and agreements relied upon to justify enforcement.

3. Defendants asserted the ability to withhold records based on unspecified federal/state law and undisclosed "contracts or agreements with another entity," yet refused to identify the authority or produce the agreements, despite Plaintiff's formal dispute and demand.

4. By withholding material evidence while continuing enforcement, Defendants violated due process as articulated in *Brady* and compounded that violation through silence where a duty to speak existed, as condemned in *Tweel*.

5. Defendants relied on assertions and boilerplate rather than admissible proof, contravening *Trinsey*, and proceeded with enforcement absent individualized review, rendering actions void under *Paulick*.

6. Plaintiff expressly challenged jurisdiction and authority. Defendants failed to decide those challenges and proceeded anyway, contrary to *Basso*, *Melo*, and *Rogers*. Any actions taken without resolved jurisdiction are void, including under *Sramek*.

7. Defendants imposed or threatened sanctions and coercive measures without providing due process, violating *Ryan*.

8. Defendants' continued enforcement rested on agency interpretation and secrecy, not independent judicial judgment, in violation of *Loper Bright*, *Marbury*, *American Trucking*, and *Decatur*.

## D. Individual Liability; Immunity Unavailable

1. Each individual Defendant participated in or ratified enforcement while withholding evidence and refusing review, outside lawful authority.

2. Because immunity does not protect ultra vires conduct, *Scheuer*, qualified immunity is unavailable.

3. Defendants' deprivation of Plaintiff's property and liberty interests occurred pursuant to the systemic policies and practices described above, including uniform withholding of evidence and refusal to provide individualized review, rendering the deprivations predictable, repeated, and policy-driven, rather than accidental or isolated.

## E. Causation and Damages

1. Defendants' actions proximately caused Plaintiff's loss of wages, impairment of driving and economic interests, exposure to additional sanctions, and ongoing harm.

2. Defendants' conduct was willful, knowing, and reckless, supporting compensatory and punitive damages.

## F. Relief

1. Plaintiff seeks: (a) declaratory relief that Defendants' conduct violates the Fourth, Fifth and Fourteenth Amendments; (b) injunctive relief barring enforcement absent disclosure and lawful process; (c) punitive damages against individual Defendants; and (d) costs and other relief permitted by law.

## F-A. Damages, Sanctions, and Punitive Awards

### A. Punitive Damages – Federal Constitutional Violations (Individual Capacity)

Defendants' conduct was willful, knowing, malicious, and undertaken with reckless disregard for Plaintiff's clearly established constitutionally secured rights. For violations of the United States Constitution, including but not limited to the denial of due process in violation of the First, Fourth, Fifth, Seventh and Fourteenth Amendments, Plaintiff seeks punitive damages in the amount of One Million Dollars ($1,000,000.00 USD)

against each liable Defendant in his or her individual capacity, as punishment and deterrence for intentional constitutional misconduct.

## B. New Hampshire Constitutional Violations – Bond and Surety Liability

For violations of the New Hampshire Constitution, including but not limited to Part I, Article 2-b (Right of Privacy), Article 15 (Right of Accused / Due Process), and Article 20 (Jury Trial in Civil Causes), Plaintiff seeks recovery of One Million Dollars ($1,000,000.00 USD) per liable Defendant from the public-official bond and surety issued pursuant to NH RSA 93-B:1-a through RSA 93-B:5 and 45 C.F.R. § 302.19, for ultra vires acts, breach of statutory conditions, and violations committed under color of law.

For the avoidance of doubt, Plaintiff expressly disclaims any monetary relief from the State of New Hampshire or its treasury with respect to this bond-based claim. Recovery under RSA 93-B is directed solely to the surety providing the Defendant's public-official bond, is contractual and statutory in nature, is capped at the bond amount, and is separate and supplemental to Plaintiff's federal claims under 42 U.S.C. § 1983, without implicating Eleventh Amendment sovereign immunity.

## C. Statutory Civil Remedies and Sanctions

For violations of federal and state law alleged herein, Plaintiff seeks all civil sanctions, treble damages, equitable relief, and statutory remedies authorized by law, including but not limited to remedies available under 42 U.S.C. § 1983 and 15 U.S.C. § 15, measured by the seriousness of Defendants' misconduct and the compelling governmental interest in deterrence.

## D. Fee Schedule as Pre-Established Punitive Benchmark

All punitive amounts sought are consistent with Plaintiff's duly noticed and published Fee Schedule (see Register of Deeds, Hillsborough County – Doc. # 240001740, Book 9753, Page 719-725), which constitutes a pre-established punitive benchmark providing notice, proportionality, and deterrent calibration. Defendants were on notice of this schedule and nonetheless

persisted in the conduct alleged herein.

## E. Constitutional Guideposts Governing Punitive Damages

Defendants' conduct represents a high degree of reprehensibility recognized under Supreme Court precedent. In assessing punitive damages, the Court and jury may properly consider the constitutional guideposts articulated in BMW of North America, Inc. v. Gore and State Farm Mutual Automobile Insurance Co. v. Campbell, including:

1. **Degree of Reprehensibility** — Defendants' actions were intentional, repeated, and systematic, aimed at depriving Plaintiff of core constitutional protections;

2. **Ratio** — Where harm is ongoing, difficult to quantify, or involves constitutional injury, punitive damages need not be limited by a strict mathematical ratio, as recognized in TXO Production Corp. v. Alliance Resources Corp. and Pacific Mutual Life Insurance Co. v. Haslip; and

3. **Comparable Penalties** — Punitive damages may be evaluated against penalties authorized for analogous misconduct, reflecting legislative judgments regarding proportional punishment, including the civil penalty benchmarks reflected in 18 U.S.C. § 3571.

Substantial punitive damages are therefore constitutionally permissible and necessary to punish Defendants' misconduct and to deter future violations of fundamental rights.

## COUNT II

## 42 U.S.C. § 1983 — First Amendment Retaliation (Petition Clause)

## A. Parties and Color of Law

1. This Count is brought against the New Hampshire Department of Health and Human Services ("DHHS"); the Bureau of Child Support Services ("BCSS"); Against Lori A. Weaver, Susan N.

Brisson and Betty Raymond, in individual and official capacities (collectively, "Defendants").

2. At all relevant times, each Defendant acted under color of state law within the meaning of 42 U.S.C. § 1983.

## B. Governing Law

1. The First Amendment guarantees the right to petition the government for redress of grievances. U.S. CONST. amend. I.

2. Retaliation for the exercise of statutory and constitutionally secured rights is unlawful. Government actors may not punish, chill, or deter protected petitioning activity through coercive measures or adverse action.

3. Pro se petitioning and filings are entitled to liberal construction and protection. *Haines v. Kerner*, 404 U.S. 519 (1972); *Woods v. Carey*, 525 F.3d 886, 889–90 (9th Cir. 2008).

4. Acts taken outside lawful authority are not shielded by immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

5. Issues not supported by evidence are deemed waived; assertions without proof cannot justify adverse action. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *Trinsey v. Pagliaro*, 229 F. Supp. 647 (1964).

6. Jurisdiction and authority are never presumed and must be decided when challenged. *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 910; *United States v. Rogers*, 23 F. 658; *Melo v. United States*, 505 F.2d 1026.

7. Silence where there is a duty to speak—particularly in response to a lawful demand for review or disclosure—constitutes actionable misconduct. *United States v. Tweel*, 550 F.2d 297, 299–300 (5th Cir. 1977).

8. Due process is mandatory before sanctions or penalties may be imposed, and retaliatory escalation without process is unlawful. *Ryan v. Commission on Judicial Performance*, 45 Cal. 3d 518, 533 (1988).

9. Courts—not agencies—declare the law; agency interpretation and secrecy cannot override constitutional guarantees.

*Marbury v. Madison*, 1 Cranch 137, 177; *United States v. American Trucking Ass'ns*, 310 U.S. 534, 544; *Decatur v. Paulding*, 14 Pet. 497, 515; *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024).

## C. Protected Petitioning Activity

1. Plaintiff incorporates Section III (Factual Allegations).

2. Plaintiff engaged in protected petitioning activity by:

- submitting formal records requests and FOIA demands;
- disputing BCSS's asserted authority and secrecy based on undisclosed agreements;
- demanding supervisory and administrative review;
- challenging jurisdiction, bonding prerequisites, and lawful authority.

3. Plaintiff's petitioning was undertaken **peacefully, in good faith, and in writing,** and sought redress through lawful channels expressly provided by statute and constitutional guarantee.

## D. Retaliatory Conduct

1. Defendants' adverse actions were taken pursuant to standardized enforcement practices that escalate coercive measures in response to petitions, disputes, and record(s) requests, reflecting a policy-level retaliation that predictably chills protected activity beyond Plaintiff's case.

2. After Plaintiff engaged in protected petitioning activity, Defendants continued and escalated enforcement actions against Plaintiff, including:

- ongoing wage seizure;
- license-related sanctions and threats;
- threatened dissemination of adverse information to third parties (debt collection);
- refusal to provide jurisdictional findings and prerequisites, review, findings of facts and law, or disclosure.

3. Defendants' escalation occurred without resolving Plaintiff's jurisdictional challenges, without producing evidence, and without issuing reasoned determinations, in

contravention of *Basso*, *Rogers*, and *Melo*.

4. Defendants' silence and non-response to Plaintiff's demands—despite a duty to respond—constituted actionable misconduct under *Tweel* and rendered the petitioning process illusory.

5. Defendants' reliance on assertions rather than evidence to justify continued enforcement violates *Trinsey* and *Zannino*, and confirms that enforcement was used as punishment for petitioning, not as a neutral administrative function.

## E. Constitutional Violations

1. Defendants' conduct violated U.S. CONST. amend. 1 by retaliating against Plaintiff for exercising his right to petition.

2. Defendants' retaliatory escalation—imposed without process—also violated U.S. CONST. amend. XIV, § 1 (Due Process), as recognized in *Ryan*.

3. Because the retaliatory acts were taken outside lawful authority, Defendants are not entitled to 'immunity' claims. *Scheuer*.

4. Agency reliance on undisclosed agreements and internal interpretations to justify retaliation violates separation-of-powers principles and the judiciary's exclusive role to declare the law. *Marbury*; *American Trucking*; *Decatur*; *Loper Bright*.

## F. Causation and Damages

1. Defendants' retaliatory acts were a substantial and motivating factor in the continuation and escalation of enforcement against Plaintiff.

2. As a direct and proximate result, Plaintiff suffered:
- economic loss;
- impairment of employment of life and mobility;
- chilling of constitutionally secured rights;
- emotional distress and reputational harm.

3. Defendants acted willfully, knowingly, and with reckless disregard for Plaintiff's clearly established constitutionally secured rights.

## G. Relief

Plaintiff seeks:

1)declaratory relief that Defendants' actions violate the
U.S. and N.H. Constitutions; 2)injunctive relief
prohibiting retaliation for petitioning; 3) compensatory
damages for emotional distress and mental anguish and loss
of enjoyment of life; 4) punitive damages against
individual Defendants; 5) costs and all other relief
permitted by law.

## COUNT III

## 42 U.S.C. § 1983 — Ultra Vires Acts / Lack of Lawful Authority

## A. Parties and Color of Law

1. This Count is brought against the New Hampshire Department
   of Health and Human Services ("DHHS"); the Bureau of Child
   Support Services ("BCSS");Against Lori A. Weaver, Susan N.
   Brisson and Betty Raymond

2. At all relevant times, each Defendant acted under color of
   state law within the meaning of 42 U.S.C. § 1983.

## B. Governing Law

1. Acts taken without lawful authority are void and not
   protected by immunity. Official immunity is not absolute;
   actions outside the scope of lawful authority are
   unprotected. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

2. Jurisdiction and authority are never presumed; once
   challenged, they must be decided. Actions taken without
   jurisdiction are void, and a tribunal lacking jurisdiction
   has no authority to reach the merits. *Basso v. Utah Power &
   Light Co.*, 495 F.2d 906, 910; *Melo v. United States*, 505
   F.2d 1026; *United States v. Rogers*, 23 F. 658.

3. Judgments or orders entered without personal jurisdiction
   are void. *Sramek v. Sramek*, 17 Kan. App. 2d 573, 576-77,
   840 P.2d 553 (1992).

4. Rubber-stamp or non-individualized review renders actions
   void. *State v. Paulick*, 277 Minn. 140, 151 N.W.2d 596

(1967).

5. Assertions are not evidence; authority must be proven with admissible proof. *Trinsey v. Pagliaro*, 229 F. Supp. 647 (1964).

6. Silence where there is a duty to speak constitutes actionable misconduct. *United States v. Tweel*, 550 F.2d 297, 299–300 (5th Cir. 1977).

7. Courts—not agencies—declare the law; agencies may not invent or expand authority by interpretation, secrecy, or internal agreement. *Marbury v. Madison*, 1 Cranch 137, 177; *United States v. American Trucking Ass'ns*, 310 U.S. 534, 544; *Decatur v. Paulding*, 14 Pet. 497, 515; *Loper Bright Enters. v. Raimondo*, 603 U.S. ___ (2024).

8. When government engages in commercial or quasi-commercial activity, it is bound by law as a private actor. *Clearfield Trust Co. v. United States*, 318 U.S. 363–371 (1943).

9. Issues not supported by evidence are waived. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).

## C. Constitutional Provisions Implicated

1. U.S. CONST. amend. V & XIV — deprivation of liberty or property without due process is prohibited.

2. U.S. CONST. art. I, § 1 — legislative power cannot be delegated to agencies to create binding law by interpretation or agreement.

3. N.H. CONST. pt. I, arts. 1, 2, 12, 14, 15, and 20 — natural rights, accountability, law of the land, due process, petition, and jury trial protections prohibit secret or unauthorized exercises of power.

## D. Ultra Vires Conduct

1. Plaintiff incorporates Section III (Factual Allegations).

2. Defendants proceeded with enforcement actions against Plaintiff after Plaintiff challenged jurisdiction and authority, yet Defendants failed to decide those challenges or produce admissible proof of authority, in violation of *Basso*, *Melo*, and *Rogers*.

3. Defendants asserted authority to withhold records and continue enforcement based on undisclosed "contracts or agreements with another entity," yet refused to identify or produce such agreements or the legal authority permitting reliance upon them, contrary to *Trinsey* and *Tweel*.

4. Defendants relied on agency interpretation, secrecy, and internal arrangements rather than judicially declared law to justify enforcement, in violation of separation-of-powers principles enforced by *Marbury*, *American Trucking*, *Decatur*, and *Loper Bright*.

5. Defendants' failure to provide individualized review and reasoned determinations, while proceeding with enforcement, constitutes rubber-stamp action rendering such actions void under *Paulick*.

6. To the extent Defendants acted without resolved personal jurisdiction or lawful authority, any resulting actions are void ab initio under *Sramek*.

7. Defendants' actions exceeded lawful authority as a matter of policy and custom, including routine reliance on undisclosed agreements and non-adjudicative enforcement. Such systemic ultra vires conduct confirms knowing action outside jurisdiction and defeats any claim of good-faith error.

8. Where Defendants' conduct involved collection, reporting, or other quasi-commercial enforcement mechanisms, Defendants were bound by law as private actors and could not rely on sovereign prerogative to excuse unlawful conduct. *Clearfield Trust*.

## E. Individual Liability; Immunity Unavailable

1. Each individual Defendant knowingly participated in, directed, authorized, or ratified enforcement actions without lawful authority, after authority was expressly challenged.

2. Because such acts were ultra vires, Defendants are not entitled to qualified or official immunity. *Scheuer*.

3. Defendants' continued reliance on assertions unsupported by evidence constitutes waiver under *Zannino*.

## F. Causation and Damages

1. Defendants' ultra vires actions directly caused Plaintiff's loss of wages, impairment of liberty and economic interests, exposure to additional sanctions, and ongoing harm.

2. Defendants acted willfully and knowingly in excess of authority, supporting compensatory and punitive damages.

## G. Relief

Plaintiff seeks:

- declaratory relief that Defendants' actions were ultra vires, void, and unconstitutional;

- injunctive relief prohibiting enforcement absent lawful authority and jurisdiction duly established on the record;

- compensatory damages;

- punitive damages against individual Defendants – Defendants' conduct was willful, knowing, intentional, deceptive, and undertaken with reckless and callous disregard for Plaintiff's constitutionally secured rights, warranting the imposition of punitive damages. The Supreme Court has repeatedly held that substantial punitive-to-compensatory ratios do not violate due process where the conduct is intentional and deterrence is required. In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 23-24 (1991), the Court upheld a punitive award approximately four times compensatory damages, emphasizing the need to deter intentional misconduct. In TXO Production Corp. v. Alliance Resources Corp., 509 U.S. 443, 462 (1993), the Court upheld a punitive award 526 times actual damages, holding that courts may consider the potential harm and reprehensibility of the defendant's conduct, not merely the actual damages awarded.

Here, Defendants' actions exposed Plaintiff to substantial potential economic harm, including loss of wages, license deprivation, credit destruction, and market exclusion, and were undertaken as part of an institutional enforcement scheme. Punitive damages in a ratio sufficient to punish and deter such conduct are therefore constitutionally permissible and necessary.;

- costs and all other relief permitted by law.

**COUNT IV**

**Civil Antitrust Violations - 15 U.S.C. §§ 1 & 15 (Sherman Act / Clayton Act)**

**A. Parties and Capacity**

1. This Count is brought against:

   o the New Hampshire Department of Health and Human Services ("DHHS");
   o the Bureau of Child Support Services ("BCSS");
   o the BCSS Director/Administrator Lori A. Weaver;
   o BCSS officials Susan N. Brisson and Betty Raymond; and
   o John/Jane Doe private entities, including but not limited to consumer credit reporting agencies and other third-party contractors, data processors, or enforcement intermediaries (collectively, "Antitrust Defendants").

2. To the extent governmental Defendants engaged in collection, reporting, data-sharing, or other quasi-commercial conduct, they acted as market participants rather than as neutral sovereign regulators.

**B. Governing Law**

1. Every contract, combination, or conspiracy in restraint of trade or commerce among the several States is illegal. 15 U.S.C. § 1.

2. Any person injured in his business or property by reason of such violation may sue therefor and recover treble damages. 15 U.S.C. § 15.

3. When the government enters commercial or quasi-commercial activity, it is bound by the same legal standards as private actors. *Clearfield Trust Co. v. United States*, 318 U.S. 363-371 (1943).

4. Courts, not agencies, determine the lawfulness of authority and conduct. *Marbury v. Madison*, 1 Cranch 137, 177; *United States v. American Trucking Ass'ns*, 310 U.S. 534, 544; *Decatur v. Paulding*, 14 Pet. 497, 515; *Loper Bright Enters.*

*v. Raimondo*, 603 U.S. ___ (2024).

5. Assertions unsupported by evidence are waived and cannot justify coercive action. *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *Trinsey v. Pagliaro*, 229 F. Supp. 647 (1964).

## C. Relevant Market and Interstate Commerce

1. The conduct at issue affects interstate commerce, including:

     o interstate consumer credit markets;
     o employment and labor markets dependent on creditworthiness and licensure;
     o interstate financial services and reporting systems.

2. Consumer credit reporting agencies operate nationwide, and the furnishing of negative credit information necessarily travels in interstate commerce.

3. Defendants' conduct restrains participation in these markets by imposing economic penalties and market exclusion through coordinated reporting and enforcement mechanisms.

For purposes of the Sherman Act, the relevant markets restrained by Defendants' conduct include, at minimum:

(a) the interstate consumer credit reporting and credit-scoring market, including the furnishing, dissemination, and use of adverse credit information;

(b) employment and labor markets in which access, mobility, or retention is conditioned upon creditworthiness, licensure, or background screening;

(c) interstate financial services and reporting markets reliant on accurate, contestable, and non-coercively furnished consumer data.

4. Defendants' coordinated conduct operates to foreclose affected individuals, including Plaintiff, from meaningful participation in these markets by imposing punitive economic sanctions and reputational restraints without judicial adjudication, thereby distorting competitive conditions and suppressing lawful contestation.

## D. Contract, Combination, or Conspiracy

1. Plaintiff incorporates Section III (Factual Allegations).

2. BCSS expressly asserted that records and information may be withheld pursuant to "contract or agreement with another entity."

3. BCSS further threatened and/or initiated consumer credit bureau reporting of alleged arrearages, which necessarily requires agreements, arrangements, or understandings with private, for-profit credit reporting agencies.

4. On information and belief, BCSS and DHHS entered into agreements or coordinated arrangements with private entities governing:

- what information is reported;
- when it is reported;
- how disputes are handled or disregarded;
- and how reporting is used as leverage to compel payment.

5. These agreements and arrangements have been withheld from Plaintiff, despite formal demands, and are invoked to justify secrecy while coercive enforcement continues.

## E. Unreasonable Restraints of Trade

1. Defendants' concerted conduct constitutes an unreasonable restraint of trade by:

- foreclosing affected individuals from fair participation in credit and employment markets;
- imposing reputational and financial penalties without judicial adjudication;
- suppressing contestation and alternative dispute mechanisms;
- leveraging state power in coordination with private market actors to extract payment.

2. The restraint is not incidental or regulatory in nature, but coercive and punitive, imposed through extra-judicial economic sanctions.
   - Defendants' coordinated use of wage seizure, license sanctions, and threatened credit-bureau reporting constitutes the imposition of punitive civil penalties, not mere regulatory administration. Under

SEC v. Jarkesy, such penalty-based enforcement may not
be imposed outside Article III courts or without the
protections of a trial by jury, and Defendants' use of
administrative and agreement-based mechanisms to
impose these penalties underscores the unlawfulness
and coercive nature of the restraint.

## F. Antitrust Injury

1. Plaintiff has suffered antitrust injury of the type the
   Sherman Act was designed to prevent, including:

- exclusion from competitive credit markets;
- distortion of employment opportunities tied to credit and
  licensure;
- impairment of economic mobility and market participation.

2. Plaintiff's injuries are not merely personal or incidental,
   but flow directly from concerted governmental-private
   conduct that restrains commerce and competition.

3. The injuries alleged are not merely personal or incidental,
   but reflect harm to the competitive process itself. By
   leveraging state enforcement power in coordination with
   private market actors to suppress disputes, deter
   contestation, and impose market exclusion, Defendants'
   conduct reduces competition, impairs market integrity, and
   chills lawful participation by similarly situated
   individuals subject to the same enforcement scheme.

## G. Absence of Immunity

1. To the extent Defendants rely on sovereign or state-action
   immunity or quasi-judicial immunity, such immunity does not
   apply where:

- Defendants act as market participants (*Clearfield Trust*);
- conduct is based on undisclosed agreements with private
  actors;
- actions are ultra vires and outside clearly articulated and
  affirmatively expressed state policy in compliance with
  State and Federal constitutionally secured rights.

2. Acts taken without lawful authority are not protected.
   *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).
   - Under SEC v. Jarkesy, Defendants cannot claim immunity
     or administrative discretion to justify the imposition

of punitive economic sanctions through non-judicial
processes. Where enforcement operates as punishment
rather than regulation, constitutional protections
attach, and actions taken in disregard of those
protections are ultra vires and unprotected.

3. Defendants' conduct is not protected by state-action
immunity because the restraints alleged are not clearly
articulated and affirmatively expressed state policy to
displace competition, nor are they actively supervised
by the State within the meaning of *Parker v. Brown*. The
coordinated use of undisclosed agreements with private
credit reporting agencies to impose punitive economic
sanctions, suppress disputes, and exclude individuals
from interstate markets exceeds any statutory mandate
and reflects discretionary, commercial conduct
undertaken without legislative authorization or
judicial supervision.

## H. Causation and Damages

1. As a direct and proximate result of Defendants'
anticompetitive conduct, Plaintiff has suffered:

- loss of wages and earning capacity;
- Possible damage to credit standing;
- Possible exclusion from financial and employment
opportunities;
- ongoing economic harm.

2. Plaintiff seeks relief under 15 U.S.C. § 15, including
treble damages, costs, and appropriate injunctive relief.

3. In addition to treble damages authorized by 15 U.S.C. § 15,
Plaintiff seeks punitive and equitable relief sufficient to
deter Defendants' anticompetitive conduct. The Supreme
Court has recognized that substantial punitive awards are
constitutionally permissible where conduct is intentional
and poses significant potential harm. See *Pacific Mutual
Life Insurance Co. v. Haslip, 499 U.S. 1, 23-24 (1991); TXO
Production Corp. v. Alliance Resources Corp., 509 U.S. 443,
462 (1993)*. Defendants' coordinated use of enforcement and
private-market mechanisms to impose economic penalties
justifies punitive and deterrent remedies commensurate with
the scale and potential harm of the misconduct.

4. Defendants' coordinated use of wage seizure, license

sanctions, and adverse credit reporting functions as
punishment rather than regulation, imposed through
agreement-based mechanisms outside Article III
adjudication. Where enforcement operates as economic
punishment rather than neutral administration,
constitutional protections attach, and the resulting
concerted restraint of trade falls squarely within the
Sherman Act's prohibitions.

## H-A. Discovery Trigger and Preservation of Evidence

*(Rule 26(a), (b), and (d))*

1. COUNT IV places at issue the existence, scope, and
operation of contracts, agreements, memoranda of
understanding, data-sharing arrangements, and
coordinated practices between Defendants and private
third parties, including but not limited to consumer
credit reporting agencies and enforcement
intermediaries. These agreements are not collateral;
they constitute the core instrumentality of the alleged
restraint of trade.

2. Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii),
Defendants are required to disclose all bonds and
blanket undertakings and document(s), agreement(s),
communication(s), and data-sharing instrument(s) they
may use to support any defense asserting lawful
authority, immunity, justification, or regulatory
compliance for the conduct alleged.

3. Discovery into the existence and terms of the bonds
and blanket undertakings and contracts and agreements
alleged herein is proportional under Rule 26(b)(1)
because:

(a) the information is uniquely in Defendants'
possession;
  (b) the agreements are dispositive of immunity,
authority, and antitrust liability;
  (c) Plaintiff cannot plead further specificity without
access to the withheld bonds and agreements; and
  (d) Defendants have affirmatively invoked such
agreements as a basis for withholding records and
justifying enforcement.

4. Good cause exists under Rule 26(d)(1) for immediate,

limited discovery directed solely to:

(a) identification and production of all agreements,
contracts, MOUs, or data-sharing arrangements referenced
by Defendants as "contracts or agreements with another
entity";
  (b) identification of all private entities
participating in reporting, collection, enforcement, or
data dissemination concerning Plaintiff; and
  (c) policies governing dispute suppression, reporting
timing, and coordination.

5. Discovery Not Stayed by Dispositive Motions.
 Because COUNT IV alleges concerted action and
agreement-based restraints of trade, discovery into the
agreements themselves is necessary to resolve threshold
defenses and should not be stayed pending any Rule 12
motion. Courts routinely permit discovery of alleged
conspiratorial agreements where the agreements
themselves are the subject of the claim.

6. Defendants are on notice of their obligation to
preserve all documents, communications, databases, logs,
metadata, and electronically stored information relating
to agreements, reporting, enforcement coordination, and
dispute handling. Spoliation or alteration of such
evidence will support sanctions.

## I. Relief

1. Plaintiff seeks:

1) declaratory relief that Defendants' agreements and
coordinated conduct violate the Sherman Act; 2)
injunctive relief prohibiting further anticompetitive
reporting and coordination; 3) treble damages pursuant
to 15 U.S.C. § 15; 4) costs and all other relief the
Court deems just and proper; 5) An award of punitive
damages against individual Defendants in an amount
sufficient to punish and deter willful and malicious
misconduct, consistent with *Pacific Mutual Life
Insurance Co. v. Haslip*, 499 U.S. 1 (1991), and *TXO
Production Corp. v. Alliance Resources Corp.*, 509 U.S.
443 (1993).

**COUNT V**

**42 U.S.C. § 1983 — Unconstitutional Misappropriation of Funds / Unjust Enrichment**

**A. Parties and Color of Law**

1. This Count is brought against the New Hampshire Department of Health and Human Services ("DHHS"); the Bureau of Child Support Services ("BCSS"); BCSS Director/Administrator Lori A. Weaver; and BCSS officials Susan N. Brisson and Betty Raymond (collectively, "Defendants").

2. At all relevant times, each Defendant acted under color of law within the meaning of 42 U.S.C. § 1983.

3. Plaintiff incorporates Section III and all preceding Counts as if fully set forth herein.

**B. Governing Law**

1. Government actors may not collect, retain, transfer, or distribute property without lawful authority, valid judicial process, and resolved jurisdiction. Actions taken without such authority are ultra vires, void, and unprotected by immunity. *Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974).

2. A judicial stay suspends enforcement authority and eliminates any operative legal predicate for collection. Executive action taken during a stayed proceeding lacks lawful authorization.

3. The Fourth and Fourteenth Amendments prohibit the unreasonable seizure and retention of property and the deprivation of property without due process of law, and the Fifth Amendment further prohibits the appropriation or

retention of private property for public use without just compensation.

4. Where government actors obtain or retain funds through unconstitutional or ultra vires enforcement, equity requires restitution, disgorgement, and accounting, regardless of intent.

5. 'Immunity' does not bar equitable relief, restitution, or disgorgement for unconstitutional or unauthorized conduct.

## C. **Stayed Proceeding and Absence of Enforcement Authority**

1. The underlying state domestic-relations proceeding giving rise to enforcement actions against Plaintiff has been stayed since approximately November 2023 and remains stayed pending resolution of a fully briefed and submitted federal appeal before the United States Court of Appeals for the First Circuit.

2. A stay suspends all enforcement authority derived from the stayed proceeding and preserves federal appellate jurisdiction.

3. Defendants were on actual notice of the stay, the pendency of the federal appeal, and Plaintiff's jurisdictional and constitutional objections.

## D. **Misappropriation Through Ultra Vires Collection and Retention**

1. Notwithstanding the stay and lack of operative judicial authority, Defendants continued to seize Plaintiff's wages and income, impose or threaten license-based sanctions, and pursue coercive enforcement measures.

2. Any funds collected, retained, credited, transferred, or distributed by Defendants during the pendency of the stay

were obtained without lawful authority.

3. Defendants' continued possession, control, crediting, or distribution of such funds constitutes unconstitutional misappropriation and unjust enrichment under color of law.

4. Plaintiff alleges civil misappropriation arising from ultra vires enforcement and unconstitutional retention of property.

**E. Title IV-D Enforcement Structure and Unjust Enrichment**

1. On information and belief, BCSS operates as a Title IV-D child-support enforcement agency participating in federally structured enforcement, accounting, and reporting systems.

2. Plaintiff alleges that enforcement activity, collections, and retained funds are tracked, credited, and administratively accounted for within the Title IV-D framework.

3. Plaintiff alleges that the structural performance incentive to continue collection activity, combined with enforcement during a stayed proceeding, resulted in unconstitutional enrichment derived from funds obtained without lawful authority.

4. To the extent funds were collected, retained, credited, transferred, or distributed as a result of enforcement actions taken in connection with Plaintiff's case—including funds collected from Plaintiff and/ or any related federal reimbursements, incentive payments, administrative cost-sharing payments, or other Federal Financial Participation received, credited, or allocated to DHHS or BCSS that were calculated, reported, or derived in whole or in part from such enforcement activity—whether retained by BCSS, credited toward administrative or performance

metrics, transferred or distributed pursuant to
administrative formulas, intergovernmental arrangements, or
programmatic requirements, or used to support, subsidize,
or justify continued enforcement operations, such
retention, use, or disposition constitutes unjust
enrichment and unconstitutional misappropriation arising
from enforcement actions undertaken without lawful
authority and during the pendency of a stayed proceeding.

5. These allegations are pleaded to establish equity,
causation, and the appropriateness of restitution,
accounting, and disgorgement.

## F. Causation and Injury

1. As a direct and proximate result of Defendants'
unconstitutional misappropriation and unjust enrichment,
Plaintiff suffered loss of wages, loss of use and enjoyment
of property, and continuing economic and constitutional
injury.

2. Because unlawfully obtained funds may be transferred,
distributed, or commingled, legal damages alone are
inadequate.

## G. Equitable Remedies — Accounting, Disgorgement, and Restitution

Equity requires a full and complete accounting of all funds
collected, retained, credited, transferred, or distributed as a
result of enforcement actions taken against Plaintiff during the
pendency of the state-court stay and federal
proceeding(s)-(beginning 18th of October, 2023 to current),
including but not limited to:

- the total amounts collected from Plaintiff;
- the dates, methods, and sources of each collection;

- the custodianship and control of all collected funds at each stage;
- all transfers, credits, allocations, or distributions of such funds;
- all federal reimbursements, incentive payments, administrative cost-sharing payments, and all other Federal Financial Participation received, credited, or allocated to DHHS or BCSS that were calculated, reported, or derived in whole or in part from enforcement activity involving Plaintiff's case;
- the statutory or regulatory authority relied upon for each such federal payment;
- and all entities or accounts exercising custody, control, or beneficial use of such funds.

1. Plaintiff seeks disgorgement of all funds obtained through unconstitutional enforcement, regardless of downstream disposition.

2. Plaintiff seeks restitution restoring the status quo ante and preventing continued unjust enrichment.

## H. Absence of Immunity

1. Defendants are not entitled to qualified immunity or other immunity for ultra vires acts and unconstitutional retention of property.

2. No reasonable official could believe that retaining funds obtained through enforcement during a stayed proceeding was lawful. Whatever authority Defendants may have believed they possessed prior to the stay, that authority terminated upon entry of the stay. Enforcement actions taken thereafter were ultra vires.

## I. Relief

Plaintiff seeks:

1. Declaratory relief that Defendants' collection, retention, and use of funds during the stayed proceeding constituted unconstitutional misappropriation and unjust enrichment;

2. An order compelling a full and complete accounting of all funds collected, retained, credited, transferred, or distributed as a result of enforcement actions taken against Plaintiff during the pendency of the state-court stay and the federal proceeding(s), including but not limited to: the total amounts collected from Plaintiff; the dates, methods, and sources of each collection; the custodianship and control of such funds at each stage; all transfers, credits, allocations, or distributions of such funds; all federal reimbursements, incentive payments, administrative cost-sharing payments, or other Federal Financial Participation received, credited, or allocated to DHHS or BCSS that were calculated, reported, or derived in whole or in part from enforcement activity involving Plaintiff's case; the statutory or regulatory authority relied upon for each such payment; and all entities or accounts exercising custody, control, or beneficial use of such funds.

3. Disgorgement and restitution of all funds unlawfully obtained;

4. Injunctive relief prohibiting further collection, retention, transfer, or distribution of funds absent lawful authority and resolved jurisdiction; and

5. Such other legal and equitable relief as the Court deems just and proper.

## VI. CONCLUSION

This action presents a continuous course of unconstitutional, ultra vires, and retaliatory conduct undertaken by Defendants under color of state law and pursuant to standardized policies, practices, agreements, and enforcement mechanisms. The record establishes not an isolated administrative error, but a structural denial of constitutional process, marked by secrecy, coercion, non-adjudicative enforcement, and deliberate refusal to resolve jurisdictional and authority challenges.

Defendants have seized wages, threatened and imposed license sanctions, and invoked market-exclusion mechanisms while withholding the very records, agreements, jurisdictional facts, and authority they claim justify enforcement. They have done so in the face of repeated, formal demands for disclosure, supervisory review, and lawful adjudication. This conduct violates the First, Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution; Part I, Articles 1, 2, 2-b, 3, 14, 15, and 20 of the New Hampshire Constitution; and multiple federal and state statutory mandates expressly pleaded in this action.

Once jurisdiction, authority, and due process were challenged, Defendants were constitutionally obligated to stop and decide those challenges. They did not. Instead, they escalated enforcement. Under settled law, actions taken without resolved jurisdiction and lawful authority are void ab initio, not merely voidable. No amount of agency assertion, internal agreement, or administrative silence can cure that defect.

The Court is not being asked to defer to agency discretion. It is being asked to enforce the Constitution. After *Loper Bright*, agencies may not define or expand their own power through interpretation or undisclosed agreements. After *Jarkesy*, punitive economic sanctions may not be imposed through non-Article III processes without jury protections. And after *Marbury*, it remains "emphatically the province and duty of the judicial department to say what the law is."

Because Defendants' conduct was knowing, willful, retaliatory, and undertaken in reckless disregard of clearly established rights, both equitable intervention and substantial punitive remedies are necessary—not only to make Plaintiff whole, but to deter repetition of the same unconstitutional enforcement scheme against others.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully demands that this Court enter judgment in his favor and grant the following relief, each item independent, cumulative, and non-exclusive:

## A. Declaratory Relief

1. A declaration pursuant to 28 U.S.C. §§ 2201–2202 that Defendants' acts and practices, as alleged, violate:

   ○ the First, Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution;

   ○ Part I, Articles 1, 2, 2-b, 3, 14, 15, and 20 of the New Hampshire Constitution;

   ○ 42 U.S.C. §§ 1983, 1985, and 1986;

   ○ applicable federal and state due-process, disclosure, and jurisdictional statutes pleaded herein.

2. A declaration that enforcement actions taken without resolved jurisdiction, lawful authority, disclosure of material evidence, and meaningful judicial adjudication are ultra vires and void ab initio.

3. A declaration that Defendants' reliance on undisclosed "contracts or agreements with another entity" to justify secrecy and enforcement is unconstitutional and unlawful.

## B. Injunctive and Equitable Relief

1. A permanent injunction prohibiting Defendants, their agents, contractors, and cooperating entities from:

   ○ enforcing, collecting upon, or escalating any child-support-related enforcement action against Plaintiff unless and until final outcome of 1st Circuit Case No. 24-1442 and lawful authority, jurisdiction, and due process are established on the record;

   ○ withholding record(s), agreement(s), calculations, or evidence while continuing enforcement;

   ○ retaliating against Plaintiff for protected

petitioning activity.

2. An order compelling Defendants to produce:

- o full accounting of all funds collected, retained, credited, transferred, or distributed as a result of enforcement actions taken against Plaintiff during the pendency of the state-court stay and federal proceeding(s), including all related federal reimbursements, incentive payments, administrative cost-sharing, or other Federal Financial Participation derived in whole or in part from Plaintiff's case, together with identification and production of all records, data, calculations, agreements, contracts, memoranda of understanding, CSES files, and any interagency or third-party arrangements relied upon for enforcement, custodianship, transfers, distributions, and the statutory or regulatory authority relied upon for each such payment.

- o proof of statutory bonding, surety coverage, and custodial responsibility under NH RSA 93-B:1-a through 93-B:5 and 45 C.F.R. § 302.19 for each individual involved in the entirety of DHHS-BCSS involvement.

## C. Compensatory Damages

1. An award of compensatory damages in an amount to be determined by the jury for:

- o loss of wages and earning capacity;
- o deprivation of property and liberty interests;
- o emotional distress, mental anguish, reputational harm, and loss of enjoyment of life and property;
- o economic and market exclusion harms proximately caused by Defendants' conduct.

## D. Punitive Damages — Individual Capacity

1. An award of punitive damages against each individual Defendant, in their individual capacity, in the amount of $1,000,000.00 per Defendant, or such greater amount as the jury finds necessary, to punish and deter willful, knowing, and malicious constitutional violations, consistent with *BMW v. Gore*, *State Farm v. Campbell*, *TXO*, and *Haslip*.

## E. Bond and Surety Liability

1. An award against the public-official bonds and sureties of liable Defendants pursuant to NH RSA 93-B:1-a through RSA 93-B:5 and 45 C.F.R. § 302.19 for ultra vires acts and constitutional violations committed under color of law, without recourse to the State treasury.

## F. Antitrust Remedies

1. An award of treble damages under 15 U.S.C. § 15 for antitrust injury resulting from Defendants' concerted governmental-private conduct restraining interstate commerce.

2. Injunctive relief prohibiting further anticompetitive coordination, reporting, or market-exclusion practices.

## G. Costs, Fees, and Ancillary Relief

1. An award of costs, expenses, and all allowable statutory or equitable relief.

2. Such other and further relief—legal, equitable, or declaratory—as the Court deems just, proper, and necessary to vindicate constitutional rights and prevent recurrence of the unlawful practices proven herein.


I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my abilities and knowledge.

ALL RIGHTS RESERVED WITHOUT PREJUDICE
VOID WHERE PROHIBITED BY LAW

Matthew-Lane: Hassell    Dated: 29th of December, 2025

Matthew-Lane: Hassell authorized agent of
MATTHEW LANE HASSELL
20 Arlington St. Unit D
Nashua, New Hampshire [03060]
(603) 231-0844
mhas191@yahoo.com