FILED - USDC -NH
2026 JAN 5 PM 1:05

# U.S. DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MATTHEW LANE HASSELL. et al,<br>　　Plaintiff,<br><br>vs.<br><br>Department of Health and Human Services -<br>Bureau of Child Support Services et al,<br>Betty Raymond et al,<br>Lori A. Weaver et al,<br>Susan N. Brisson et al,<br>　　Defendant, | ) <br>) CASE NUMBER:<br>) 1:25-cv-00550-LM-AJ<br>)<br>)<br>)<br>) Trial By Jury Demanded<br>) Yes<br>)<br>)<br>) |

## RENEWED EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

*(Fed. R. Civ. P. 65)*

### I. INTRODUCTION

Plaintiff Matthew-Lane: Hassell respectfully moves for the immediate issuance of a Temporary Restraining Order ("TRO") and, upon notice, a Preliminary Injunction, pursuant to Federal Rule of Civil Procedure 65.

This renewed emergency motion cures the sole procedural defect identified by the Court's December 31, 2025 Order, expressly satisfies every mandatory element of Rule 65, and is supported by specific sworn facts demonstrating immediate and irreparable harm that will occur before Defendants can be heard unless this Court acts now.

This motion seeks only to preserve the constitutional status quo and prevent ongoing and ultra vires executive enforcement during a stayed state proceeding and a fully submitted federal appeal.

1

## II. JURISDICTION AND AUTHORITY

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343. This Court has express authority under Article III and Fed. R. Civ. P. 65 to enjoin unconstitutional, jurisdictionally defective, and/ or ultra vires government action.

## III. VERIFIED FACTS ESTABLISHING IMMEDIATE AND IRREPARABLE HARM *(Rule 65(b)(1)(A))*

Plaintiff declares under penalty of perjury as follows:

1. Defendants are continuing or imminently threatening enforcement actions against Plaintiff arising from a state domestic-relations matter that is expressly stayed and subject to pending federal appellate review.
2. These enforcement actions include, but are not limited to, administrative coercion, compelled compliance demands, and threatened deprivation of liberty and property interests, all allegedly undertaken without lawful jurisdiction and in defiance of Plaintiff's pending federal appeals claims.
3. Absent immediate injunctive relief, Defendants' actions will result in:
    - ongoing constitutional violations of Plaintiff's First, Fourth, Fifth, Seventh, and Fourteenth Amendment rights;
    - irreparable harm that cannot be remedied by monetary damages, including loss of liberty, coerced compliance, chilled constitutionally secured rights, and unlawful executive punishment;
    - injury that will occur before Defendants can be heard in opposition, given the nature of administrative enforcement mechanisms.
4. No adequate remedy at law exists. Once enforcement action is taken, the constitutional injury is complete.
5. On or about November 14, 2025, BCSS issued a Notice of License Revocation dated November 13, 2025, stating that

    Plaintiff had 21 days to request supervisory review and that no enforcement action would be taken until completion of that review. See Doc. No. 1-3, pp. 37-39 of 104.

6. The same notice stated that Plaintiff could alternatively seek review in state family court; however, the relevant family court proceedings had been stayed since approximately November 2023, rendering that option unavailable.

7. On November 25, 2025, Plaintiff timely mailed a written request for supervisory review and Affidavit (undisputed) and supporting documentation, fully complying with the notice. See Doc. No. 1-3 in its entirety and specifically pp. 9-35 and 41-67.

8. Despite this, BCSS and its agents requested license revocation by the New Hampshire DMV and threatened reporting alleged arrears to a credit bureau, before issuing any findings of facts and law, as requested from the supervisory review. See Doc. No. 1-3 in its entirety and specifically pp. 9-35 and 41-67.

9. Plaintiff received notice dated December 18, 2025, from the New Hampshire DMV that his license was being suspended based on information supplied by BCSS.

10. Notwithstanding that enforcement was required to be stayed by the underlying state-court stay and by BCSS's independently own written representations pending supervisory review, and notwithstanding BCSS's actual notice—through Plaintiff's written Supervisory Review Demand dated November 25, 2025 (see Doc. No. 1-3, pp. 8-35, and 40-67, and 90-104—explicitly invoking constitutional objections, judicial review, full disclosure of evidence and documentation and the right to trial by jury), the license suspension and credit-reporting consequences nonetheless continued automatically and without further discretionary action, such that any delay to permit adversarial briefing would prolong an ongoing constitutional deprivation before Defendants can be heard.

3

These facts are current, specific, sworn, and immediate, and independently satisfy Rule 65(b)(1)(A). The foregoing facts establish a procedural due process violation independent of the merits of any underlying support determination. Where the State conditions enforcement on the availability of review and expressly represents that enforcement will be withheld pending completion of that process, the subsequent imposition of coercive sanctions before review completion deprives the affected individual of notice and a meaningful opportunity to be heard. See *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (due process requires notice and opportunity to be heard "at a meaningful time and in a meaningful manner"); *Goldberg v. Kelly*, 397 U.S. 254, 267-71 (1970) (procedural protections required before termination of benefits where deprivation is severe). Here, BCSS simultaneously directed Plaintiff to administrative review, represented that enforcement would be stayed pending that review, and identified state judicial review that was unavailable due to an existing stay—then proceeded with license suspension and credit reporting without 'full disclosure' of review determination. Under these circumstances, enforcement preceded process, rendering post-deprivation remedies illusory and constitutionally insufficient.

The sworn facts set forth above demonstrate that the injury will occur and is occurring before Defendants can be heard, because license suspension, credit reporting, and related enforcement actions operate automatically upon agency request.

## IV. RULE 65(b)(1)(B) CERTIFICATION REGARDING NOTICE

Pursuant to Fed. R. Civ. P. 65(b)(1)(B), Plaintiff certifies in writing:

1. **Notice Provided** - On December 31, 2025, Plaintiff provided written notice of intent to renew emergency injunctive relief by email to:
    - Lori A. Weaver (Lori.A.Weaver@dhhs.nh.gov)

   - Susan N. Brisson (Susan.N.Brisson@dhhs.nh.gov)
   - John M. Formella (john.m.formella@doj.nh.gov)
   - New Hampshire Department of Health and Human Services (dhhs.aau@dhhs.nh.gov)
2. **Prior Notice and Awareness** – Prior to seeking emergency relief, Plaintiff repeatedly placed Defendants on notice that their conduct violated the Constitution and subjected them to potential liability, to include but is not limited to liability under 42 U.S.C. § 1983 and demanded that enforcement be held in abeyance, as documented in Exhibit A (Doc. 1-3) and related filings; Defendants nevertheless continued the challenged enforcement, necessitating immediate judicial relief.
3. **Why Immediate Relief Is Still Required** – Despite notice, Defendants have continued or threatened enforcement. Delay would permit irreparable harm to occur before judicial review is possible.

## V. INCORPORATION OF RECORD

In addition to the specific sworn facts stated above, Plaintiff incorporates the totality of:

- The original Emergency Motion for TRO and Preliminary Injunction (Doc. 2);
- Exhibit A and attachments thereto (Doc. 1-3);
- The verified Complaint (Doc. 1).

## VI. LEGAL STANDARD AND GROUNDS FOR RELIEF – *(Rule 65(a))*

Plaintiff satisfies all four factors for injunctive relief, each of which independently favors issuance of relief:

1. **Independent Procedural Due Process Violation Establishing Likelihood of Success** – Even assuming arguendo that Defendants possessed substantive authority to enforce child

5

support obligations, the enforcement challenged here is independently unconstitutional because it occurred after Defendants affirmatively represented that enforcement would be stayed pending supervisory review, and while judicial review was unavailable due to a court-ordered stay. When the State conditions enforcement on the availability of review, and then executes coercive sanctions before that review occurs, the deprivation is complete at the moment of enforcement. No post-deprivation remedy can cure the injury. This defect is structural, not discretionary, and alone establishes a likelihood of success on the merits.
2. **Additional Likelihood of Success on the Merits** – Plaintiff asserts substantial constitutional claims under the First, Fourth, Fifth, Seventh, and Fourteenth Amendments arising from jurisdictionally void and ultra vires executive-Administrative action.
3. **Irreparable Harm** – Constitutional deprivations, loss of liberty, and coercive enforcement constitute irreparable harm as a matter of law.
4. **Balance of Equities** – Defendants have no lawful interest in continuing unconstitutional conduct. Plaintiff faces harm absent relief.
5. **Public Interest** – The public interest is always served by enforcing constitutional limits on government power.

Plaintiff expressly does not waive any right to a jury trial. Fed. R. Civ. P. 65(a)(2).

## VII. REQUEST FOR WAIVER OF SECURITY *(Rule 65(c))*

Courts routinely waive security where, as here, a plaintiff seeks to enjoin unconstitutional governmental action and the defendant has no legitimate interest in continuing unlawful conduct. Plaintiff respectfully requests waiver of any security requirement because:

- Defendants are governmental actors;

- Plaintiff seeks only to restrain unconstitutional and ultra vires enforcement;
- The injunction preserves the status quo;
- Defendants cannot suffer legally cognizable harm from being restrained from unlawful conduct.

**VIII. RULE 65(d)** - Rule 65(d)(1) requires that every TRO or injunction (A) state the reasons it issued, (B) state its terms, and (C) describe in reasonable detail, the act or acts restrained or required. Plaintiff therefore submits the following operative terms to ensure facial compliance with Rule 65(d):

> **PROPOSED TEMPORARY RESTRAINING ORDER:**
> Defendants New Hampshire Department of Health and Human Services, Bureau of Child Support Services, and the named individual Defendants, together with their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with them, are TEMPORARILY RESTRAINED AND ENJOINED from initiating, continuing, enforcing, directing, requesting, or causing any child-support enforcement action against Plaintiff arising from the stayed state proceeding, including but not limited to: (1) income withholding or wage garnishment; (2) license suspension, restriction, denial, or renewal interference; (3) credit reporting or data furnishing; (4) bank levies, liens, intercepts, or seizures; and (5) contempt referrals or quasi-criminal enforcement measures, pending further order of this Court.
>
> This TRO is issued to preserve the status quo and prevent irreparable harm alleged to result from ongoing executive enforcement undertaken during a stayed proceeding and pending federal appellate review.

## IX. Procedural Flexibility and Harmless Error Authority Governing Ex Parte TROs

Ex parte temporary restraining orders under Fed. R. Civ. P. 65(b) are, by design, emergency equitable instruments intended to prevent irreparable harm that will occur before an adverse party can be heard. Although Rule 65(b) requires satisfaction of procedural safeguards, those safeguards exist to protect substantial rights and the integrity of the adversarial process—not to elevate technical form over constitutional substance where immediate relief is necessary. See Fed. R. Civ. P. 1; Fed. R. Civ. P. 65(b).

Rule 61 imposes an additional and independent constraint: at every stage of the proceeding, courts must disregard errors or defects that do not affect any party's substantial rights. Fed. R. Civ. P. 61. Where the substantive prerequisites of Rule 65(b) have been met, the opposing party has actual notice of the challenged conduct and legal objections, and no cognizable prejudice is shown, non-jurisdictional procedural imperfections may not be transformed into a basis for denying emergency relief if doing so would permit the alleged constitutional injury to continue. In such circumstances, rigid adherence to form does not preserve fairness; it defeats it.

Equity has long recognized the maxim that justice delayed is justice denied, particularly where irreparable harm is ongoing and time-sensitive. That maxim does not operate as a rule of decision, but as a structural principle reflecting the constitutional requirement that equitable relief remain effective rather than illusory.

Where, as here, a plaintiff has presented sworn evidence of ongoing constitutional injury, established federal jurisdiction, and satisfied the substantive requirements for emergency relief under Rule 65(b), judicial inaction itself acquires legal consequence. At that point, the court's failure to act to preserve the status quo does not maintain neutrality; it

affirmatively permits the continuation of the very injury the court is empowered to prevent. Delay under such conditions renders eventual relief ineffective, undermines the purpose of equitable intervention, and risks reducing Article III adjudication to a hollow formality. The Constitution is inconsistent with a regime in which ongoing executive coercion is allowed to persist solely because immediate equitable authority remains unexercised.

Furthermore, The Supreme Court has recently reaffirmed that structural constitutional protections are not technicalities, but essential limits on administrative enforcement exercising executive power. In *SEC v. Jarkesy*, 603 U.S. ___, 144 S. Ct. 2117, 219 L. Ed. 2d 650 (2024), the Court emphasized that the imposition of coercive sanctions through executive-administrative processes, without meaningful access to Article III adjudication, constitutes a structural constitutional injury. Likewise, in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024), the Court rejected judicial deference to agency interpretations of law, underscoring that courts—not agencies—bear responsibility for independent legal judgment. These principles reinforce that where administrative enforcement proceeds while meaningful judicial review is unavailable, delayed, or rendered illusory, continued inaction is not neutral: it permits coercive sanctions to persist without the independent judicial judgment the Constitution requires, and renders the emergency protections of Rule 65 ineffective precisely when they are most needed.

## X. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1. Invoke its authority under Article III and Fed. R. Civ. P. 65 to issue immediate temporary injunctive relief, including a Temporary Restraining Order, enjoining

Defendants and all persons acting in concert with them from undertaking or continuing any enforcement actions against Plaintiff during the pendency of the state-court stay and the fully submitted federal appeal before the United States Court of Appeals for the First Circuit;

2. Resolve Plaintiff's request for preliminary injunctive relief on the papers, and convert the Temporary Restraining Order into a Preliminary Injunction upon notice, based on the sworn record, without an evidentiary hearing as the sworn record is sufficient to resolve the request;

3. Waive any requirement of security under Rule 65(c), because the relief sought is narrowly tailored to preserve the status quo and restrain ongoing governmental enforcement alleged to be unconstitutional and ultra vires; Defendants have no lawful entitlement to continue the challenged conduct and therefore cannot suffer compensable harm from being restrained from actions taken without jurisdiction or authority; and

4. Award such other and further relief as necessary to prevent ongoing constitutional injury.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my abilities and knowledge.

ALL RIGHTS RESERVED WITHOUT PREJUDICE

VOID WHERE PROHIBITED BY LAW

_Matthew-Lane: Hassell_ Dated: 2nd of January, 2026

Matthew-Lane: Hassell authorized agent of
MATTHEW LANE HASSELL
20 Arlington St. Unit D
Nashua, New Hampshire [03060]
(603) 231-0844
mhas191@yahoo.com

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2026, I caused a true and correct copy of the foregoing Renewed Emergency Motion for Temporary Restraining Order and Preliminary Injunction (Fed. R. Civ. P. 65) to be served by United States Postal Service First-Class Mail / Priority Mail, addressed to the following:

- **New Hampshire Department of Health and Human Services – Bureau of Child Support Services**
  (served through the Office of the Commissioner)

- **Lori A. Weaver,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **Susan N. Brisson,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **Betty Raymond,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **John M. Formella,** Attorney General
  New Hampshire Department of Justice

Service was made by mailing to each recipient at their last known business address. Service was effected in good faith and in compliance with Fed. R. Civ. P. 5(b)(2)(C).

ALL RIGHTS RESERVED WITHOUT PREJUDICE

VOID WHERE PROHIBITED BY LAW

*/s/ Matthew-Lane: Hassell*     Dated: 2nd of January 2026

Matthew-Lane: Hassell authorized agent of
MATTHEW LANE HASSELL
20 Arlington St. Unit D
Nashua, New Hampshire [03060]
(603) 231-0844
mhas191@yahoo.com