FILED - USDC -NH
2026 JAN 14 PM2:18

# U.S. DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| MATTHEW LANE HASSELL et al, | ) |
|     Plaintiff, | ) CASE NUMBER: |
| | ) 1:25-cv-00550-LM-AJ |
| vs. | ) |
| | ) |
| Department of Health and Human Services - | ) |
| Bureau of Child Support Services et al, | ) Trial By Jury Demanded |
| Betty Raymond et al, | ) Yes |
| Lori A. Weaver et al, | ) |
| Susan N. Brisson et al, | ) |
|     Defendant, | ) |

**PLAINTIFF'S MOTION FOR RECONSIDERATION -** *(Rule 54(b) and Inherent Authority
— Mischaracterization, Omission, and Record Clarification)*

## INTRODUCTION

    LET THE COURT RECORD, AND PRIVATE RECORD AND PUBLIC RECORD
REFLECT AND MEMORIALIZE pursuant to Federal Rules of Evidence et al (FRE), 201
(c)(2) and New Hampshire Rules of Evidence et al, (NHRE), 201(d) "JUDICIAL NOTICE"
the U.S. Constitution et al, and New Hampshire Constitution et al, as well as all civil
officers involved in this matter Oath of Office.

This filing incorporates the totality of Doc. Nos. 1, 1-3, 2, and 5 to the extent relevant,
and Plaintiff separately sets forth below the grounds for reconsideration. These filings
are to be entered in evidence at the earliest possible convenience.

This motion seeks reconsideration of the Court's January 9, 2026 Order both to correct
material mischaracterizations and omissions of the record and, based on those errors, to
reconsider the denial of temporary injunctive relief. Plaintiff submits that the denial
rested on a misapprehension of the record and an incorrect application of the
irreparable-harm standard, and that reconsideration is necessary to prevent ongoing and
compounding constitutional injury and ultra vires agency actions and to clarify the
procedural posture of service under Fed. R. Civ. P. 4(m). It also seeks to ensure that the
docket accurately reflects what Plaintiff actually moved for, what factual predicates were

presented, and what issues were not addressed despite being squarely presented, for purposes of orderly proceedings and appellate review.

Plaintiff further respectfully moves for reconsideration of the Court's January 9, 2026 Order because: (1) the denial of emergency Rule 65 relief followed a formal referral of Plaintiff's motion under 28 U.S.C. § 636(b)(1)(B) yet occurred without any Report and Recommendation ("R&R") being issued, served, or subjected to de novo review, resulting in an unconstitutional displacement of Article III adjudication; (2) the Order misapprehends and mischaracterizes the nature of irreparable constitutional injury arising from ongoing executive enforcement by DHHS-BCSS; and (3) the Order improperly relies on administrative or post-hoc remedies as a substitute for timely Article III judicial relief.

Likewise, 28 U.S.C. § 654 expressly prohibits referral to arbitration—whether mandatory or by consent—where an action is based on alleged violations of rights secured by the Constitution or where jurisdiction rests in whole or in part on 28 U.S.C. § 1343. Plaintiff's claims fall squarely within those prohibitions.

Article III vests the judicial power exclusively in courts established pursuant to the Constitution. That vesting is mandatory, not discretionary. Courts may not divest themselves of that power through administrative delegation, nor may they decline to adjudicate constitutional claims by characterizing them as administrative or collateral matters. Structural separation-of-powers principles exist to protect individual litigants, not merely institutional prerogatives.

Accordingly, reconsideration is necessary to correct the record, to ensure meaningful Article III adjudication of Plaintiff's constitutional claims, and to prevent ongoing irreparable harm arising from enforcement actions taken without lawful authority.

Plaintiff disputes any characterization of this matter as subject to administrative resolution or non-Article III displacement. The controlling constitutional and statutory framework—including Article III vesting, non-delegation principles, and the mandatory adjudicatory requirements triggered once 28 U.S.C. § 636(b)(1)(B) is invoked—is set forth in Argument § I.A infra and incorporated by reference.

**A. Administrative Adjudication and Executive Forum-Selection Are Constitutionally Limited** - See Argument § I.A (Article III violation arising from displacement of judicial power), which addresses these issues and incorporating SEC v. Jarkesy and Loper Bright Enterprises.

**B. "Judge Not Court / Coram Non Judice" and Article IV § 4 as Structural Context for Ultra Vires Enforcement** - Plaintiff invokes Article IV, § 4 as structural context reinforcing the judiciary's duty to police ultra vires executive enforcement. Where executive action proceeds on void or non-judicial predicates, the republican-form guarantee underscores the necessity of Article III adjudication. The coram non judice / judge-not-court theory itself is preserved and set forth in § C infra.

**C. Plaintiff's "Judge vs. Court / Coram Non Judice" Argument Is a Structural Challenge to Executive Reliance on Void Orders**

BCSS's asserted authority rests on state "orders" that Plaintiff contends are jurisdictionally void—"coram non judice"—and not acts of a constitutionally competent court. Plaintiff's point is not rhetorical; it is structural: executive enforcement premised on void orders is ultra vires, and the federal court's Article III duty is to adjudicate the legality of the deprivation when equitable relief is sought.

Plaintiff invokes the principle that judicial power is exercised by a court acting within lawful authority, not merely by an individual signature or administrative reliance on void process. *Carper v. Fitzgerald*, 121 U.S. 87 (1887).

Plaintiff further frames this as an equitable-necessity problem rooted in the Judiciary Act of 1789's division between legal and equitable remedies: where there is no adequate remedy at law for ongoing constitutional deprivation, equitable relief must remain available in an Article III court.

**D. Article IV, § 4 (Republican Form of Government) as Structural Context**

Plaintiff further invokes Article IV, § 4's guarantee of a republican form of government as structural context: executive officers derive authority from lawful constitutional offices and must act within lawful bounds. Where executive enforcement is premised on void orders or ultra vires authority, the federal judiciary's checking role is heightened. This

point is offered to reinforce the separation-of-powers frame—not to replace the Article III / due process / Rule 65 analysis.

For all these reasons, reconsideration is necessary to correct the record, restore the adjudicatory process mandated by § 636(b)(1)(B) and Rule 72(b), ensure meaningful Article III adjudication of Plaintiff's Rule 65 motion, and prevent continuing constitutional injury.

## STANDARD OF REVIEW

Because the January 9, 2026 Order is interlocutory, reconsideration is governed by Rule 54(b) and the 'Court's' inherent authority, which permit revision "as justice requires," including to correct misapprehensions of the record, mischaracterizations of a party's position, or material omissions. See, e.g., *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994).

**ARGUMENT** - Plaintiff seeks reconsideration on five grounds:

1. Failure to provide meaningful Article III adjudication following a referral under 28 U.S.C. § 636(b)(1)(B), including the absence of any Report and Recommendation, opportunity for objection, or de novo review;

2. Mischaracterization of the nature and scope of Plaintiff's TRO request;

3. Omission of sworn Rule 65(b)(1)(A) facts and an independent procedural due-process theory;

4. Clarification of service status under Fed. R. Civ. P. 4(m); and

5. Reconsideration of the denial of temporary injunctive relief based on the foregoing misapprehensions, omissions, and non-harmless structural adjudicatory defects, affecting the irreparable-harm analysis.

Each is addressed briefly below and summarized in the Record Clarification Table.

## I. BASIS FOR RECONSIDERATION

### A. Failure of Meaningful De Novo Review Violates Article III - *(Referral Under § 636(b)(1)(B) Without an R&R Is Unlawful and Constitutionally Defective)*

1. Section 636(b)(1)(B) Creates Mandatory Preconditions; Rule 72(b) Supplies the Objection and De Novo Mechanism - When a district judge refers a dispositive matter to a magistrate judge under 28 U.S.C. § 636(b)(1)(B), the statute requires: (i) an R&R with proposed findings and recommendations; (ii) service; (iii) an opportunity to object; and (iv) de novo determination by the district judge of those portions properly objected to. These steps are the constitutional predicate for magistrate assistance; without them, the "adjunct" model collapses. *Raddatz*, 447 U.S. at 681–82.

2. Here, Referral Occurred, But the Court Entered a Merits Denial Without Any R&R, Service, Objections, or De Novo Review - The Court invoked § 636(b)(1)(B) in its referral order; yet no R&R was issued or served and no Rule 72(b) objection process occurred. The Court nevertheless denied the TRO on the merits. Doc. 6 at 2–3.

Once the Court initiated the § 636(b)(1)(B) pathway, there were only two lawful routes:

1. Withdraw the referral and decide the Rule 65 motion directly as an Article III adjudication; or
2. Proceed through the statutory mechanism: R&R → objections → de novo review.

The Court did neither.

3. This Procedural Hybrid Displaces Article III Judicial Power

The Supreme Court forbids procedural structures that transfer essential attributes of judicial power to non-Article III actors or obscure who actually decided constitutional questions. *Stern*, 564 U.S. at 480–84; *Northern Pipeline*, 458 U.S. at 58–60; *Schor*, 478 U.S. at 851.

This is structural error, not a harmless defect, because it deprives Plaintiff of the adjudicatory protections the Constitution and Congress required when the Court invoked § 636(b)(1)(B).

4. "Shall" Means Mandatory — Courts Lack Discretion to Ignore Statutory Commands Once Invoked

The term "shall is mandatory", in the Supreme Court's controlling decision in *Smith v. Spizzirri*, 601 U.S. ___ (2024): the Court held that "shall" in 9 U.S.C. § 3 "creates an obligation impervious to judicial discretion." The Ninth Circuit decision in *Forrest v. Spizzirri LLC*, 62 F.4th 1201 (9th Cir. 2023)—recognized the same textual force ("plain text … appears to mandate"), even while following circuit precedent.

Applying that principle here: once the Court invoked the § 636(b)(1)(B) referral mechanism that provides for "proposed findings and recommendations" and de novo review, the process cannot be bypassed without either withdrawing the referral or complying with the statutory sequence.

## II. MISCHARACTERIZATION OF THE RELIEF SOUGHT

### A. The Order Characterizes the Motion as a Generic Challenge to Child-Support Enforcement

The Order states that Plaintiff "has sued … claiming that their efforts to enforce his child-support obligations violate his … rights" and that he seeks to enjoin "enforcement actions." This description omits critical language repeatedly and expressly stated in the totality of both the original (Doc. 2) and renewed (Doc. 5) motions:

- The relief sought was limited to independent executive-administrative performance incentivized enforcement undertaken during a stayed proceeding and a fully submitted federal appeal;
- The purpose of the TRO was status-quo preservation and protection of federal appellate jurisdiction, not adjudication of support obligations.

Where enforcement operates automatically and meaningful judicial review is deferred, the injury is irreparable because no later remedy can restore the period of lost liberty, mobility, or constitutionally secured protections. This narrowing was central to Plaintiff's jurisdictional and Rule 65 framing and is material to understanding the complexity of the complaint and motion presented.

Plaintiff necessarily examines and challenges the jurisdictional validity, procedural regularity, and legal operability of the state-court proceedings as part of proving that Defendants' subsequent administrative and executive performance incentivized enforcement actions lack lawful authority and violate federal and state constitutional and statutory limits. The state-court proceedings are therefore not referenced merely as background facts, but as integral components of the factual and legal showing that enforcement by DHHS proceeded without operative judicial authority and in contravention of state and federal constitutionally secured rights (1st, 4th, 5th, 7th and 14th), lacking full disclosure and competent review to the totality of the circumstances.

Reconsideration is warranted to clarify that the TRO motion was not a request to adjudicate domestic-relations issues or to halt enforcement generally, but a good faith request to restrain allegedly ultra vires administrative-executive action during a jurisdictionally frozen period.

## III. MATERIAL OMISSION OF SWORN RULE 65(b)(1)(A) FACTS AND AN INDEPENDENT DUE-PROCESS THEORY

### A. Omission of Enforcement-Before-Process Theory

The order's conclusory statement that Plaintiff failed to allege irreparable harm rests on a misapprehension of the injuries asserted, the governing legal standard, and the timing and mechanics of the harm. Plaintiff alleged—and supported with sworn facts—ongoing, automatic deprivations of liberty and constitutionally protected interests, including loss of driving privileges, impairment of employment and mobility, and reputational injury, occurring during a period in which meaningful judicial review remains unavailable.

Plaintiff's showing was not speculative or contingent. He alleged that enforcement mechanisms—including license suspension and credit-reporting consequences—take effect immediately upon agency action and before any adversarial hearing can occur. Where a deprivation is triggered by executive action and continues absent judicial restraint, Rule 65(b)(1)(A)'s requirement that injury occur "before the defendants can be heard" is satisfied by the timing of the harm itself. Delay for notice, briefing, or opposition prolongs and aggravates the deprivation rather than preventing it.

Post-deprivation administrative procedures or later monetary relief do not cure such injury. The Supreme Court has held that the loss of constitutional freedoms, even for minimal periods, constitutes irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The First Circuit likewise holds that injuries which cannot be undone through later relief—including ongoing or self-executing deprivations—are irreparable notwithstanding the availability of damages. *Ross-Simons*, 102 F.3d at 18–19; *Textron*, 842 F.2d at 891.

The Order characterizes Plaintiff's allegation that delay would "prolong an ongoing constitutional deprivation" as conclusory. It is not. Plaintiff alleged under oath that enforcement consequences are automatically triggered, proceed without contemporaneous adjudicative findings disclosed to Plaintiff, and take effect before adversarial process is possible. Where the deprivation persists during the period required for defendants to be heard, delay itself is the injury; the allegation describes the mechanics of the harm, not a conclusory label.

Independently, Plaintiff alleged a structural enforcement-before-process due-process violation where: 1) BCSS represented that enforcement would be withheld pending supervisory review; 2) Plaintiff timely invoked that review; 3) judicial review was unavailable due to a court-ordered stay; yet 4) enforcement—including license suspension and credit consequences—proceeded before completion of review and without disclosure of findings of facts and law. This theory is structural, does not depend on the merits of any underlying support obligation, was supported by sworn facts, and was not addressed in the Order–lacking competent review to the totality of the circumstances.

Finally, the Order's statement that Plaintiff "provides no support" for the assertion that enforcement was stayed misapprehends both Plaintiff's position and the Rule 65 inquiry. Plaintiff did not claim that enforcement was categorically stayed as a matter of state domestic-relations law. He alleged—and supported with sworn facts—that judicial authority over the underlying proceeding was stayed pending federal appellate review, and that Defendants nonetheless initiated or continued automatic executive enforcement during a period of judicial unavailability and without meaningful judicial oversight. For Rule 65(b)(1)(A) purposes, that showing—not the presence or absence of a docket notation—controls.

Finally, NH RSA 161-B:11 independently confirms the immediacy and irreparability of the harm alleged. Once an obligor timely requests supervisory review, "the department shall stay the certification action." NH RSA 161-B:11, III. Certification may proceed only after completion of that review and issuance of a written decision. Plaintiff alleged under oath that he timely invoked supervisory review and that enforcement nevertheless proceeded, triggering license consequences before the statutorily required stay and before issuance of the written decision. Because licensing boards are required to revoke upon certification and the obligor is expressly barred from challenging certification before the board, NH RSA 161-B:11, V, the deprivation is immediate, self-executing, and not cured by later administrative proceedings. In these circumstances, delay itself is the injury, and post-deprivation remedies cannot restore the period of lost liberty and mobility.

Had these factual and legal predicates been fully considered, the conclusion that Plaintiff failed to allege irreparable harm would have been different. These errors affected not only the framing of the TRO request, but the Court's irreparable-harm analysis itself, and therefore warrant reconsideration of the denial under Rule 54(b).

## B. Institutional Scrutiny

Recent legislative action further underscores that concerns regarding the structure and operation of New Hampshire's Family Division are not speculative, isolated, or raised solely by litigants. On January 7, 2026, the New Hampshire House of Representatives voted 183–161 to recommit House Bill 652, a proposal that would abolish the Family Division, create an Office of Family Mediation, and reassign the Family Division's jurisdiction. N.H. H.B. 652 (2026); House Journal (Jan. 7, 2026). The bill's express premise—that the existing Family Division structure warrants abolition and jurisdictional reassignment—reflects substantial, contemporaneous institutional concern within the political branches regarding the adequacy of current family-court processes.

Plaintiff does not invoke pending legislation as legal authority or as a basis for adjudication. Rather, the relevance of this legislative action is factual and contextual: where adjudicative structures are themselves the subject of serious institutional scrutiny, the need for strict oversight and adherence to jurisdictional limits, statutory stays, and procedural safeguards is heightened, not diminished. Executive enforcement actions that proceed automatically and without meaningful judicial oversight during periods of

judicial unavailability cannot be justified by deference to a process that even the legislature has formally questioned at a structural level.

## IV. CLARIFICATION REGARDING SERVICE UNDER FED. R. CIV. P. 4(m)

The Order notes that summonses were issued on December 29, 2025 and that Plaintiff "does not indicate the status of service."

For clarity of the record:

- This action was filed on December 29, 2025;
- Under Fed. R. Civ. P. 4(m), Plaintiff has 90 days from filing—until March 29, 2026— because that date falls on a Sunday, the deadline is extended by Fed. R. Civ. P. 6(a)(1)(C) to Monday, March 30, 2026, and service therefore remains timely;
- Plaintiff has already effected Rule 5 service of the renewed TRO motion by mail and is in the process of completing Rule 4 service within the prescribed period.

Plaintiff respectfully requests that the record reflect that service remains timely under Rule 4(m) and that no service deficiency presently exists.

## V. CHARACTERIZATION OF PLAINTIFF'S TRO MOTIONS

From the outset of this action, Plaintiff unambiguously framed this case as a challenge to ultra vires executive enforcement undertaken after judicial authority was suspended, not as a request to adjudicate or modify domestic-relations orders.

The Court's January 9, 2026 Order describes Plaintiff as "claiming that [Defendants'] efforts to enforce his child-support obligations violate his rights." That description omits critical language that appears on the face of the original Complaint itself.

### A. The Complaint Expressly Disclaims Modification of State-Court Orders

In the opening pages of the Complaint, Plaintiff states:

> "Plaintiff does not seek review, reversal, or modification of any state-court judgment. Rather, Plaintiff challenges Defendants' independent executive enforcement actions, taken without operative judicial authority, in defiance of a stayed proceeding."

This disclaimer appears before any motion practice and governs the entire case. The TRO motions did not introduce a new theory; they sought interim relief consistent with the original pleading.

## B. The Complaint Pleads the Same Enforcement-During-Stay Theory and Federal Appellate Review Presented in the TRO Motions

The Complaint alleges, in sworn factual detail, that:

- the underlying state domestic-relations proceeding "has been stayed since around November 2023 and remains stayed pending resolution of a fully briefed and submitted federal appeal";
- Defendants nevertheless "seized Plaintiff's property through executive action after judicial authority had been suspended";
- enforcement actions such as wage garnishment, license sanctions, and threatened credit reporting were undertaken after the stay and during exclusive federal appellate jurisdiction.

These allegations predate the TRO motions and establish that the emergency relief sought was status-quo-preserving, not disruptive of state adjudication.

## C. The Complaint Independently Pleads the Procedural Due-Process Defect Omitted from the Order

The Complaint also pleads—at length—the same enforcement-before-process defect raised in the renewed TRO motion, including:

- Silence or refusal of full disclosure of supervisory or administrative review;
- withholding of records and agreements while enforcement continued;
- escalation of coercive measures "without individualized findings of fact and law";
- enforcement occurring while judicial review was unavailable due to the stay.

Thus, the procedural due-process theory the Order did not address was not ancillary or newly raised; it is one of the core causes of action pleaded in Counts I–III of the Complaint.

## D. The TRO Motions Were Consistent With — Not Broader Than — the Complaint

Nothing in the TRO motions exceeded the scope of the Complaint. To the contrary:

- The Complaint seeks declaratory and injunctive relief barring enforcement absent lawful authority;
- The TRO motions sought temporary restraint of the same executive enforcement actions during the pendency of the stay and federal appeal.

Accordingly, characterizing the TRO motions as a generic attempt to halt "child-support enforcement" divorces the emergency filings from the case as pleaded and obscures the jurisdictional and constitutional predicates presented from day one.

Where territorial or subject-matter jurisdiction is absent, actions taken in furtherance of the proceeding are void as a matter of law and are not attributable to lawful governmental acts. Federal courts retain authority under 42 U.S.C. § 1983 to enjoin unconstitutional proceedings and their enforcement. *Mitchum v. Foster*, 407 U.S. 225, 242–43 (1972).

Plaintiff respectfully notes that this clarification is necessary to preserve an accurate record for appellate review. Where an interlocutory order describes the nature of a party's claims or relief sought in a manner inconsistent with the pleadings and sworn record, reconsideration to correct that framing is appropriate to prevent error from compounding at later stages, including review.

## VI. CONCLUSION

This motion seeks to ensure that the docket accurately reflects what was argued, what was supported by sworn facts, and what the Court was required—but failed—to adjudicate. Reconsideration is warranted under Rule 54(b) not only because the January 9, 2026 Order rested on material misapprehensions and omissions of the record, but also because the Court invoked a statutory adjudicatory mechanism that mandates Article III review and then bypassed the constitutionally required process.

Once the Court referred Plaintiff's motion under 28 U.S.C. § 636(b)(1)(B), the statute and governing constitutional structure required issuance of a Report and Recommendation, service, an opportunity for objection, and de novo determination by an Article III judge.

None of those steps occurred. The resulting merits denial therefore constitutes a structural adjudicatory defect and an unlawful displacement of Article III judicial power. Such error is not harmless and independently requires reconsideration.

Separately and additionally, the Court's analysis of irreparable harm rested on an incomplete understanding of the sworn record and an erroneous view that Plaintiff's injuries were compensable through administrative process or later damages. Plaintiff alleged and supported with sworn facts that enforcement operates automatically, deprives liberty and constitutionally secured rights on an ongoing basis, and proceeds during a period in which meaningful judicial review is unavailable. Under settled precedent, such injuries are irreparable as a matter of law.

Correcting these errors now will promote orderly adjudication, restore the adjudicatory process required by statute and the Constitution, and preserve a clean and accurate record for any further review. Reconsideration is therefore necessary to prevent manifest injustice.

## VII. RELIEF REQUESTED

Plaintiff respectfully requests that the Court:

1.  **Grant reconsideration of the Court's January 9, 2026 Order pursuant to Rule 54(b)** to correct material misapprehensions, omissions, and structural adjudicatory defects reflected in the present record;

2.  **Address and cure the failure of constitutionally required Article III adjudication following the Court's invocation of 28 U.S.C. § 636(b)(1)(B),** including the absence of any Report and Recommendation, opportunity for objection, or de novo determination by an Article III judge;

3. **Clarify that Plaintiff's TRO motions sought narrowly tailored, status-quo-preserving relief** against alleged ultra vires executive enforcement during a stayed proceeding and pending federal appellate review, and did not seek adjudication or modification of domestic-relations orders;

4. **Acknowledge that Plaintiff presented sworn Rule 65(b)(1)(A) facts and an independent enforcement-before-process procedural due-process theory** that were not addressed in the January 9, 2026 Order;

5. **Reconsider the denial of temporary injunctive relief in light of the corrected record, governing legal standards, and the foregoing structural and procedural defects**, including the irreparable nature of the constitutional injuries alleged;

6. **Clarify that service remains timely under Fed. R. Civ. P. 4(m)** and that no service deficiency presently exists; and

7. **Grant such other and further relief as justice requires** to ensure accurate framing of the record, lawful adjudication, and preservation of issues for appellate review.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my abilities and knowledge.

ALL RIGHTS RESERVED WITHOUT PREJUDICE

VOID WHERE PROHIBITED BY LAW

_Matthew-Lane: Hassell_  Dated: 14th of January, 2025

Matthew-Lane: Hassell authorized agent of
MATTHEW LANE HASSELL
20 Arlington St. Unit D
Nashua, New Hampshire [03060]
(603) 231-0844
mhas191@yahoo.com

# RECORD CLARIFICATION TABLE

| Order Characterization | Record Citation | Clarification / Correction |
|---|---|---|
| Court denied TRO following referral to magistrate judge | Referral Order; 28 U.S.C. § 636(b)(1)(B) | The Court invoked § 636(b)(1)(B), which mandates issuance of a Report and Recommendation, service, an opportunity to object, and de novo determination by an Article III judge. No R&R was issued, no objections were permitted, and no de novo review occurred. The resulting merits denial constitutes a structural adjudicatory defect and unlawful displacement of Article III judicial power. |
| TRO seeks to halt enforcement of child-support obligations | Complaint ¶¶ I–II (Introductory Allegations); TRO Motions | Plaintiff disclaims appellate-style review or substitution of judgment as to domestic-relations merits, but challenges the jurisdictional validity and legal operability of the state-court proceedings to establish that subsequent executive enforcement was ultra vires and unconstitutional during a period in which judicial review was unavailable and federal appellate jurisdiction remained ongoing. |

| | | |
|---|---|---|
| **Alleged harms are compensable economic injuries** | **Complaint Counts I–III; Sworn TRO filings** | The pleadings and sworn record allege ongoing structural constitutional injuries, including enforcement-before-process, deprivation of liberty and mobility, and retaliation for protected petitioning activity. These injuries are not cured by post-hoc damages or later reversal. |
| **No showing of irreparable harm before defendants can be heard** | **Complaint factual allegations regarding automatic enforcement; TRO sworn facts** | Plaintiff alleges that license suspension and credit-reporting consequences are triggered automatically upon agency action, during a period of judicial unavailability, such that harm necessarily occurs before adversarial briefing or hearing is possible. |
| **Availability of administrative procedures defeats irreparable harm** | **Complaint Counts I–III; TRO Motions** | The availability of post-deprivation administrative procedures does not cure ongoing constitutional injury or substitute |

| | | for timely Article III adjudication of jurisdictional and equitable claims. |
|---|---|---|
| **TRO theory limited to emergency motions** | **Complaint filed Dec. 29, 2025** | The same jurisdictional, ultra vires, and enforcement-during-stay theory was pleaded in the original Complaint prior to the TRO motions; the emergency filings sought interim relief consistent with the case as pleaded. |
| **Service status unclear** | **Docket; Fed. R. Civ. P. 4(m)** | The action was filed on Dec. 29, 2025. Under Rule 4(m), service is timely through Mar. 28, 2026. Service efforts are ongoing and within the prescribed period. |

# CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2026, I caused a true and correct copy of the foregoing PLAINTIFF'S MOTION FOR RECONSIDERATION - *(Rule 54(b) and Inherent Authority — Mischaracterization, Omission, and Record Clarification)* to be served by United States Postal Service First-Class Mail / Priority Mail, addressed to the following:

- **New Hampshire Department of Health and Human Services - Bureau of Child Support Services**
  (served through the Office of the Commissioner)

- **Lori A. Weaver,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **Susan N. Brisson,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **Betty Raymond,** individually and in her official capacity
  *(two copies served in a single mailing)*

- **John M. Formella,** Attorney General
  New Hampshire Department of Justice

Service was made by mailing to each recipient at their last known business address. Service was effected in good faith and in compliance with Fed. R. Civ. P. 5(b)(2)(C).

ALL RIGHTS RESERVED WITHOUT PREJUDICE

VOID WHERE PROHIBITED BY LAW

_____ Dated: 14th of January, 2025

Matthew-Lane: Hassell authorized agent of
MATTHEW LANE HASSELL
20 Arlington St. Unit D
Nashua, New Hampshire [03060]
(603) 231-0844
mhas191@yahoo.com